BARTLETT, et v. RICHARDSON CO.

Ohio Appeals, 6th Dist., Lucas Co.

Nos. 1797, 98, 99, 1808 and 09. Decided July 16, 1927.

426. DURESS—1. Fear of impending peril or financial injury or mere fact that one acts with reluctance does not constitute duress.

2. Duress involves illegality and implies that person has been unlawfully constrained by another to perform act under circumstances which prevent exercise of free will.

3. It can never constitute fraud or duress to do as and what person has legal right to do.

Appeal from Common Pleas.

Petition dismissed.

First Publication of this Opinion.

LLOYD, J.

The five cases enumerated involve the same questions of fact and law. were submitted upon the same evidence and will therefore be considered together.

In 1917 or shortly thereafter, C. E. Thompson, J. A. Krider and W. D. Bartlett of Cleveland, three of the plaintiffs, acquired the entire capital stock of The Lewis Steel Products Company, located and doing business in Toledo and then engaged in the manufacture of automobile valves. These gentlemen were, at that time, also interested as stockholders. officers and directors in The Steel Products Company of Cleveland, now the Thompson Products, Inc., likewise engaged in the manufacture of automobile valves.

On or about October 16, 1919, the name of the Toledo Company was changed to The Toledo Steel Products Company, and thereafter land was purchased and new buildings erected. Before the completion of the buildings, the company became financially embarrassed. the cost of the new plant and the equipment thereof being more than had been anticipated. After an unsuccessful attempt to arrange for a mortgage and bond issue, The Toledo Steel Products Company proposed to the defendant, The Richardson Company, that the first named company be so re-organized as to authorize the issuance of $250,000 of first preferred stock, and $150,000 of second preferred stock to be substituted for an issue of preferred stock then outstanding, and 12,000 shares of common stock to be in lieu of the common stock then outstanding, the first preferred stock and twenty-five per cent of the common stock so issued to be purchased by the defendant. This proposal was accepted and the ar-

rangement so made was consummated in September, 1920.

The first preferred stock was issued and contained certain terms and conditions, among which were that it was redeemable in whole or in part at $110 per share and accrued dividends on any dividend date. the holders thereof being entitled to fixed preferential cumulative dividends at the rate of 8% per annum from the date of issue. payable quarterly on the first days of January, April, July and October of each year.

The stock contained other conditions among which was that said first preferred stock should have no voting power unless (a) dividends thereon were passed for two successive quarters. (b) the net tangible assets should fall below the designated percentage and so continue for two successive quarters. and (c) default. continuing for thirty days. should be made in the performance of any of the other conditions thereof, in which event the holders of such stock might exercise the total voting power thereof so long as such default continued and by vote of the majority in amount of such stock then outstanding, declare vacant the offices of all directors and officers and elect new directors.

The dividends on the first preferred stock were passed on July 1. 1921, and for each succeeding quarter thereafter until March 26, 1924, when settlement between the plaintiffs and defendant was effected, which settlement the plaintiffs in the several actions brought by them against defendant are now seeking to avoid and have set aside.

At a meeting of the board of directors of The Toledo Steel Products Company, on June 28, 1921, Charles E. Bunting was elected president of the company. Thereafter, under his management, the business and earnings of the company increased. At a meeting of the board of directors held on January 23, 1924, and repeatedly thereafter. efforts were made to reach a settlement between the interested parties.

Nothing being accomplished by way of settlement. defendant, on February 6, 1924, at the annual meeting of the stockholders, by virtue of the power conferred by the conditions of the first preferred stock, deposed the plaintiffs from the directorate of the company and elected its own board of directors. On February 20, 1924, this board of directors authorized the officers of the company to seek a purchaser for all the property of the company and a conditional offer therefor was received.

Plaintiffs were indebted in approximately the sum of $800,000 to various banks, one of which was The Union Trust Company of Cleveland, and the stock of The Toledo Steel Products Co. owned by the plaintiffs, was deposited as collateral to their loans. These facts were known to defendant and its representatives and the plaintiffs claim that with this knowledge and with the knowledge that plaintiffs were unable to obtain sufficient funds to liquidate the investment of defendant, the defendant, through its representatives, constituting the board of directors, and its attorney, conspired to obtain a sufficient amount of common stock of the company to control it, by

falsely representing that the defendant desired to liquidate its investment, and, if necessary to accomplish this purpose, intended to cause the entire business and assets thereof to be sold; that the representatives and attorneys of defendant misrepresented the value of the property and falsely stated that it had no opportunity for gain beyond its interest as a preferred stockholder; that the acts of defendant's representatives on the board of directors of The Toledo Products Co. were taken by them, for and in behalf of the defendant and not in behalf of the stockholders of the Products Company, and against the interests of the plaintiffs, for the sole purpose of forcing plaintiffs to surrender to defendant a part of the shares of the common stock owned by them.

After this action was taken by the Board of Directors of the Products Company, as to the proposed sale of its property, negotiations ensued, proposals and counter-proposals being made, which finally resulted in plaintiffs offering to transfer to defendants such pro rata amount of the common stock of the company held by them as would give the defendant 60% of the entire common stock of the company and in addition thereto, to waive all the accrued dividends on the second preferred stock except $12,500 thereof, which was to be paid to them in cash. This tentative settlement having been made, the plaintiffs, C. E. Thompson, Krider and Bartlett, were restored to their membership on the board of directors. Thereupon, these plaintiffs participating in the meeting and voting favorably thereon, a dividend of $55,000 was declared on the first preferred stock and $12,500 on the second preferred stock; the holders of the latter stock, by the acceptance thereof, to waive all claims against the company on account of dividends thereon prior to January 1, 1924. The redemption of $25,000 par value of the first preferred stock and $15,000 par value of the second preferred stock at $110 per share, was also authorized and the defendant, as one of the considerations for the settlement and adjustment of the matters in controversy among the stockholders, having agreed to loan the company sufficient money to carry out the program so agreed upon, The Toledo Steel Products Company, by unanimous vote of its directors, was authorzied to borrow not in excess of $150,000 for these purposes.

There can be no question but that the financial condition of plaintiffs and their fear of the effect of the proposed action of defendant upon themselves and their Cleveland company, by reason of the probable attitude of the banks to which they were heavily indebted, alone moved them to concur in the demands made by the defendant. Neither can there be any question but that the representatives of the defendant chose the psychological time to effect the result accomplished, regardless of whether they did not desire thereby, as they testify, in any way to embarrass the plaintiffs, or whether as plaintiffs claim, their determined intention was to acquire control of the Toledo Steel Products Co. without consideration of the consequences to the plaintiffs.

We are not here concerned with moralistic considerations as to what different minds might think the ethics of the situation demanded.

The conditions imposed by the first preferred stock not having been performed, defendant was thereby authorized to proceed in the manner therein provided and the plaintiffs, when the first preferred stock of The Toledo Steel Products Company was sold to the defendants, were bound to anticipate the possible consequences which might ensue therefrom. All of them were business men of experience and none of them claimed to have been misled in any way. Plaintiffs frankly testify that their financial condition was such that expediency induced them to accede to the demands of the defendant, as unconscionable and unjust as they then believed them to be.

The fear of impending peril or financial injury or the mere fact that one acts with reluctance, does not constitute duress. Duress involves illegality and implies that a person has been unlawfully constrained by another to perform an act under circumstances which prevent the exercise of free will, and it can never constitute fraud or duress to do as and what a person has a legal right to do, whatever the pecuniary consequences may be to those with whom he deals.

The court is unable to conclude that plaintiffs acted under duress within the meaning of the law, and their several amended petitions are accordingly dismissed.

(Richards and Williams, JJ., concur.)

Attorneys—Ritter & Brumback for Bartlett, et; Marshall, Melhorn, Marlar & Martin for Richardson Co.; all of Toledo.