MANCINO, APPELLANT, *v.* FRIEDMAN, APPELLEE.

(No. 41331—Decided July 10, 1980.)

*Mr. Frank Mancino,* for appellant.

*Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A.,* and *Mr. Michael H. Diamant,* for appellee.

SILBERT, J.   Plaintiff-appellant, Paul Mancino, Jr., brings this appeal from an order of Cleveland Municipal Court granting the motion of defendant-appellee, Harry Friedman, to vacate and set aside a confessed judgment which appellant had previously obtained from the court.

The record of this case reflects that, on June 4, 1979, appellant filed his complaint below, alleging, *inter alia,* that appellee owed him $350 plus eight percent per annum interest from July 15, 1977, on a promissory note and that appellee had signed a warrant of attorney authorizing any attorney at law to appear on his behalf in any court of record, situated in the county where appellee resided, to waive issue and service of process and to confess a judgment in favor of the holder of the note, appellant. Attached to this complaint was a copy of a promissory note, bearing the name of Paul Mancino, Jr., as the payee, and signed by Harry Friedman.

On June 7, 1979, the court below routinely granted a confessed judgment, in appellant's favor. Thereafter, apparently alerted by appellant's efforts to enforce this judgment, appellee, on June 26, 1979, filed a motion to vacate the judgment and stay collection proceedings. Attached to this motion was a brief in which appellee submitted that the note he had signed had not been supported by consideration and had been executed under duress. Also attached to the motion was appellee's affidavit. In his affidavit, appellee stated that, in September of 1973, he had owned a partnership interest in a property known as the Lake Forest Village Apartments, located in Willoughby, Ohio; that, on September 5, 1973, three painters, Tim Ruggiero, Raymond L. McElroy and Thomas J. Palker, had filed mechanic's liens against this property for labor they had furnished a painting contractor, Dell Renkenberger, d.b.a. Dell Painting and Decorating Company; and, that the painters claimed that Renkenberger had not paid them for the work they had performed at the Lake Forest Village Apartments.

Appellee further stated in his affidavit that, in June of 1974, the three painters, represented by appellant, an attorney, had filed an action in the Court of Common Pleas of Lake County to foreclose their liens; that, at this time, Lake

Forest Village Apartments was attempting to obtain refinancing for its property, an effort which required a removal of the mechanic's liens; that, consequently, that same month, a settlement was reached among the parties involved, Lake Forest Village Apartments, Renkenberger and the three painters; that, pursuant to the terms of this settlement, Lake Forest Village Apartments paid $1,325 to Renkenberger, who, in turn, paid a total of $725 to the three painters; that Renkenberger's attorney administered the settlement, paying the painters, represented by appellant, directly; that, in return, the painters and Renkenberger, on June 20, 1974, executed releases of their claims against Lake Forest Village Apartments; and, that each of the painters further agreed to file releases of their mechanic's liens against the Lake Forest Village Apartments property.

Appellee further stated in his affidavit that, subsequently, he learned that the mechanic's liens had not, in fact, been released as agreed; that, upon contacting the painters' attorney (the appellant), appellee was informed by the latter that, as a result of the method by which the settlement had been administered, appellant had not been paid $350 in legal fees owed to him by his clients, the three painters; that appellant told appellee, that, unless appellee himself paid appellant this $350, he would not "cause" the mechanic's liens to be released; and, that, consequently, and solely to induce appellant to "cause" the mechanic's liens to be released, appellee, on July 15, 1977, executed a promissory note, payable to appellant, in the amount of $350, which contained a confession of judgment provision.

Copies of the release agreements executed by Renkenberger and the three painters, on June 20, 1974, were also attached to appellee's motion to vacate.

Appellant *did not* file a brief or any evidence in documentary form in opposition to appellee's motion to vacate.

According to an App. R. 9(C) statement of the proceedings below, made a part of this record on appeal, the lower court held a hearing on appellee's motion to vacate on August 13, 1979. At this hearing, the court announced its decision to grant appellee's motion to vacate the confessed judgment solely on the basis of appellee's affidavit. Appellant, at this time, requested an evidentiary hearing on the motion. This re-

quest was denied by the court. On August 14, 1979, the lower court journalized its order granting appellee's motion to vacate the confessed judgment.

In timely appealing from this final order, appellant assigns three errors for review:

"I. The court committed prejudicial error in granting the motion to vacate based upon an affidavit which was not subject to cross-examination.

"II. The court committed prejudicial error in granting the motion to vacate as the basis of the motion to vacate was that the defendant claimed that he had a counterclaim and also a third-party claim.

"III. The plaintiff was denied substantial rights as the motion to vacate was heard by a judge other than the judge before whom the judgment was rendered."

## I.

In Assignment of Error No. I, appellant submits that the court below erred at the hearing held on August 13, 1979, when it announced its decision to grant appellee's motion to vacate solely on the basis of appellee's affidavit, and when it precluded appellant from offering any evidence in opposition to the motion. This assignment is without merit.

The issue which controls the disposition of this assignment of error is whether the court below scheduled the hearing of August 13, 1979 to hear argument or to announce a decision, or both, or, instead, *to take evidence* on the motion to vacate.

If the court's intention in this matter was to simply hear arguments or to announce its decision on the motion, or both, then it was not error to grant appellee the relief he sought solely on the basis of the affidavit attached to his motion. It is clear that a trial court, in its discretion, may forgo holding an evidentiary hearing on a motion to vacate, and may instead grant the movant the relief he seeks solely on the basis of documentary evidence submitted with his motion papers, so long as this evidence sufficiently establishes the movant's right to relief. *Adomeit* v. *Baltimore* (1974), 39 Ohio App. 2d 97; *Doddridge* v. *Fitzpatrick* (1978), 53 Ohio St. 2d 9. In determining to decide the motion to vacate solely upon the documentary evidence submitted, a trial court is not precluded by Civ. R. 60(B), or any of the other Civil Rules, from convening the parties to hear oral argument on the merits of the motion.

Nor, obviously, is it precluded from summoning the parties to announce its decision in open court. Therefore, it would not have been error for the lower court to have convened the parties on August 13, 1979, simply to hear oral argument or to announce a decision, or both, and, at the same time, base its factual findings exclusively upon the documentary evidence attached to the brief submitted in connection with the motion to vacate.

On the other hand, if the lower court had determined, prior to the August 13, 1979 hearing, upon reviewing appellee's affidavit, that appellee had not therein demonstrated a right to relief, and the court had therefore, in its discretion, scheduled an evidentiary hearing to permit appellee a second opportunity to prove that his motion had merit, it would have been error for the court to have prevented either party from presenting evidence at such a hearing and, instead, to have decided the motion solely upon documentary evidence previously submitted with, or in opposition to, the motion. See *Bates & Springer, Inc., v. Stallworth* (1978), 56 Ohio App. 2d 223.

In the case before us, the court's intention in convening the August 13, 1979 hearing is not readily discernible from the record. However, in the absence of an affirmative demonstration of error, we are guided in this matter by the concept of presumed regularity in the proceeding below. *Ostrander* v. *Parker-Fallis* (1972), 29 Ohio St. 2d 72. Therefore, we must presume that the lower court held the August 13, 1979 hearing on appellee's motion to vacate simply to hear argument from the parties or to announce its decision, or both.

This result is not at all inconsistent with what record we do have of the proceeding below. The App. R. 9(C) statement filed with this appeal reveals that it was only after the trial court had announced its decision, at the August 13, 1979 hearing, that appellant requested an evidentiary hearing. The exchange between court and counsel on this subject, reflected within the App. R. 9(C) statement, is entirely supportive of our conclusion that the subject of an evidentiary hearing was raised for the first time below only after the court had already announced its decision on the merits of appellee's motion to vacate and stated that it was based exclusively upon appellee's affidavit. In light of the foregoing, Assignment of Error No. I is overruled.

## II.

In Assignment of Error No. II, appellant submits that the trial court erred in vacating the confessed judgment because appellee failed to demonstrate that he had a meritorious defense to appellant's claim. This assignment is also lacking of merit.

While appellant, in the brief which he submitted to this court, has contended that the lower court set aside the confessed judgment below solely to accommodate a counterclaim by appellee, we find the record to be unsupportive of this contention. Appellee's motion to vacate, filed below as a part of the trial record, reveals that appellee advanced two affirmative defenses in support of his motion—want of consideration and duress. Each is well recognized as a valid and complete affirmative defense to a claim for enforcement of a promissory note. See R. C. 1303.31, 1303.34 and 1303.44; *Ohio Loan & Discount Co.* v. *Tyarks* (1962), 173 Ohio St. 564 (want of consideration); and, *State, ex rel. Lattanner,* v. *Hills* (1916), 94 Ohio St. 171 (duress).

The trial court's judgment entry does not indicate upon which of these defenses (if not both) it based, in part,[1] its decision to vacate the confessed judgment. Upon reviewing appellee's affidavit, however, we conclude that appellee presented therein sufficient evidence demonstrative of both of these claimed defenses to support the court's decision on either grounds.

Appellee's affidavit reveals that he executed a promissory note to appellant solely to induce the latter to file releases of the mechanic's liens held by appellant's clients. Upon receiving the promissory note, appellant apparently filed these releases. However, appellant's promise to appellee to file these releases was not valuable consideration for appellee's return promise to, in effect, pay the attorney's fees allegedly owed appellant by his clients. Instead, by filing the releases, appellant simply did that which he was already under an obligation to do.

Appellee's affidavit contains sufficient evidence tending to show that a settlement had been previously reached between appellee and appellant's clients, the three painters, and that,

---

[1] See *GTE Automatic Electric* v. *ARC Industries* (1976), 47 Ohio St. 2d 146, paragraph two of the syllabus.

consequently, as the attorney for the three painters, appellant incurred an obligation to file the mechanic's lien releases on his clients' behalf. It is thus clear that appellant's subsequent promise to appellee to perform this preexisting duty was, as a matter of law, not valuable consideration for the promise elicited from appellee in return. See *Shannon* v. *Universal Mortgage & Discount Co.* (1927), 116 Ohio St. 609. Therefore, we conclude that appellee sufficiently demonstrated by affidavit his claimed defense of want of consideration.

Moreover, appellee's affidavit also contained sufficient facts demonstrating his claimed defense of economic duress. Economic duress, often termed "business compulsion",[2] is a species of duress recognized in modern practice by a majority of American courts. In Ohio, one court, while finding the concept inapplicable to the facts presented in the appeal before it, nevertheless, in so holding, had occasion to set forth the material elements of the defense:

*"The fear of some impending peril or financial injury, or the mere fact that one acts with reluctance, does not constitute duress. Duress involves illegality, and implies that a person has been unlawfully constrained by another to perform an act under circumstances which prevent the exercise of free will,* and it can never constitute fraud or duress to do as and what a person has a legal right to do, whatever the pecuniary consequences may be to those with whom he deals." (Emphasis added.) *Bartlett* v. *Richardson Co.* (1927), 27 Ohio App. 263, 270-271.

Thus, the defense of economic duress, or business compulsion, arises where one individual, acting upon another's fear of impending financial injury, unlawfully coerces the latter to perform an act under circumstances which prevent his exercise of free will.

Here, the issue which this court must resolve is whether the pressure exerted upon appellee by appellant, a licensed Ohio attorney, in refusing to file mechanic's lien releases, which were part of a settlement agreement between his clients and appellee, until appellee first agreed to sign a promissory note in the amount of the attorney's fees owed appellant by his clients, constituted business compulsion. The broader issue of the propriety of attorney conduct, consisting of the with-

---

[2] See, generally, Annotation 79 A.L.R. 3d 598.

holding of promised legal services in order to coerce third-party beneficiaries into paying attorney's fees owed by intractable clients, has not heretofore been addressed in any reported Ohio decision. Upon considering the obvious policy objectives behind the business compulsion concept, however, we conclude that appellee sufficiently demonstrated below, in his affidavit, a defense of economic duress.

We first observe that appellee's affidavit contained credible evidence that he indeed executed the note to appellant solely out of fear of impending financial injury, *i.e.,* the immediate consequences of failing to secure a refinancing of his property. Second, under the surrounding circumstances evidenced within the affidavit, the trier of fact could reasonably have inferred that appellant, as an attorney, effectively prevented appellee from exercising his free will in this matter. Finally, the method of fee extraction utilized by appellant, while not technically unlawful, clearly constituted an abuse of the privilege to practice law which this state has granted appellant. Consideration for sound public policy, derived from various relevant precepts within our Code of Professional Responsibility,[3] demands that we not countenance, in any manner, this type of predatory practice engaged in by an Ohio attorney to extract his fees from vulnerable non-clients.

We note that, but for the license which the state has permitted him to hold, appellant could not have successfully pressured appellee to execute the promissory note in question. We find this use of his license to practice law so antipathetic to the high standards of the legal profession that, while not amounting to a violation of law, it, in our opinion, supplants the element of unlawfulness, by definition, needed to prove a defense of business compulsion.

---

[3] See, *e.g.,* DR 5-107 of the Code of Professional Responsibility, "Avoiding Influence by Others than the Client," which provides, in pertinent part:

"(A) Except with the consent of his client after full disclosure, a lawyer shall not:

"(1) Accept compensation for his legal services from one other than his client.

"(2) Accept from one other than his client any thing of value related to his representation of or his employment by his client.

"(B) A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services."

See, also, EC 5-21 through 5-23; and, generally, see Canon 9.

Accordingly, we conclude that the facts within appellee's affidavit sufficiently demonstrated the merit of his claimed defense of economic duress. In light of the foregoing discussions of law therefore, Assignment of Error No. II is overruled.

### III.

In his third assignment of error, appellant contends that error was committed below when a judge of the Municipal Court, other than the particular judge who granted him his confessed judgment, granted appellee's motion to vacate that judgment. We find no merit in this final assignment of error either.

In *Rosenberg* v. *Gattarello* (1976), 49 Ohio App. 2d 87, 93-94, this court construed Sup. R. 4 (similar to what is now C.P. Sup. R. 4) to preclude the administrative judge of a Court of Common Pleas from ruling on preliminary matters in a case assigned to another judge, unless the record reflected that the assigned judge was, at the time, unavailable and that a delay in ruling on the preliminary matter would be prejudicial to the parties.

Appellant argues that, similarly, M.C. Sup. R. 3 precludes one Municipal Court judge from ruling on a motion to vacate a judgment entered by another judge of that court.

Subsection (B), the relevant provision within M. C. Sup. R. 3, reads as follows:

"(B) *Assignment system.* In all multi-judge courts, cases shall be assigned to an individual judge or to a particular session of court pursuant to the following system:

"(1) Particular session. A particular session of court is one in which cases are assigned by subject category rather than by the individual assignment system. The following subject categories must be disposed of by particular session:

"(a) Civil cases in which a motion for default judgment is made;

"(b) Criminal cases in which a plea of guilty or no contest is entered;

"(c) Initial appearance in criminal cases;

"(d) Preliminary hearings in criminal cases;

"(e) Criminal cases in which an immediate trial is conducted upon initial appearance;

"(f) Small claims cases;

"(g) Forcible entry and detainer cases in which the right to trial by jury is waived or not demanded.

"(2) Individual assignment. Cases not subject to assignment in a particular session shall be assigned by lot to a judge who shall be responsible for the determination of every issue and proceeding in the case until its termination. When a case is assigned to an individual judge, all matters, including requests for continuances, shall be submitted to that judge, or, if he is unavailable, to the administrative judge.

"Civil cases shall be assigned under this subsection when an answer is filed or when a motion, other than one for default judgment, is filed. Criminal cases shall be assigned under this subsection when a plea of not guilty is entered."

Under M. C. Sup. R. 3(B), Municipal Courts are required to assign some cases to individual judges, while others are to be assigned by subject category to judges sitting in a particular session of the court. M. C. Sup. R. 3(B)(1) specifies a non-inclusive list of subject categories which must be assigned to a particular session. Included among these categories is a motion for default judgment. While a complaint which seeks a confession of judgment is obviously different from a motion for default judgment, they do share similar relevant characteristics which would warrant a Municipal Court in assigning such complaints to particular sessions rather than to individual judges. In each proceeding, the defendant typically has not contested the allegations of the plaintiff's complaint and judgment is routinely entered for the plaintiff on his complaint.

In the case before us, the record fails to clearly indicate whether, in fact, appellant's complaint, seeking a confession of judgment, was assigned to a particular session or to an individual judge. Again, however, in the absence of an affirmative demonstration of error, we will not presume noncompliance by the court below with the requirements of M. C. Sup. R. 3(B). *Ostrander* v. *Parker-Fallis, supra* (29 Ohio St. 2d 72). Therefore, we must presume, to the contrary, that appellant's complaint for a confession of judgment was assigned to a particular session judge and only later was reassigned to an individual judge when appellee entered an appearance and moved to vacate the confessed judgment. Operating under this presumption, we find that no error occurred below when the individual judge vacated the confessed judgment earlier

40

entered by a session judge. M. C. Sup. R. 3(B) was presumably complied with in both letter and spirit. Accordingly, Assignment of Error No. III is overruled.

In accordance with our disposition of appellant's three assignments of error, the judgment of the lower court is affirmed.

*Judgment affirmed.*

STILLMAN, P. J., and PATTON, J., concur.

SILBERT, J., retired, of the Eighth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.