**Arthur M. PITTS, Plaintiff,**

v.

**DAYTON POWER & LIGHT CO., Defendant.**

**No. C–3–86–261.**

United States District Court, S.D. Ohio, W.D.

Jan. 11, 1989.

Charles F. Geidner, Thomas Angelo, III, Dayton, Ohio, for plaintiff.

Neil F. Freund, Dayton, Ohio, Thomas J. Manley, Raleigh, N.C., David M. Duwell, Dayton Power & Light Co., Dayton, Ohio, for defendant.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS OR STAY (DOC. # 12); DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS COUNT III OF PLAINTIFF'S AMENDED COMPLAINT (DOC. # 15); DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION OR SUMMARY JUDGMENT IN PART AND FINDING SAME TO BE MOOT IN PART (DOC. # 19); ORDER STAYING TRIAL ON PLAINTIFF'S CLAIMS OF AGE DISCRIMINATION PENDING TRIAL ON THE QUESTION OF THE VALIDITY OF THE RELEASE EXECUTED BY PLAINTIFF

RICE, District Judge.

This case is before the Court on the Motions of the Defendant, Dayton Power & Light Company, to Dismiss or Stay (Doc. # 12), to Dismiss Count III of Plaintiff's Amended Complaint (Doc. # 15), and for Preliminary Injunction or Summary Judgment (Doc. # 19). For the reasons briefly set forth below, the Court concludes that Defendant's Motion to Dismiss or Stay (Doc. # 12) must be overruled in its entirety; Defendant's Motion to Dismiss Count III of Plaintiff's Amended Complaint (Doc. # 15) must be overruled in its entirety; and Defendant's Motion for Preliminary Injunction or Summary Judgment (Doc. # 19) must be overruled in part and deemed moot in part.

In his Amended Complaint (Doc. # 10), Plaintiff, Arthur M. Pitts, asserts that "[o]n January 18, 1965, Plaintiff was hired as an employee by Defendant where he remained until Plaintiff's employment was terminated by Defendant. His employment was terminated on October 11, 1985 when he was forced to resign under duress by Defendant and its agents." (Doc. # 10, at ¶ 5). Plaintiff further contends that "Defendant has arbitrarily, intentionally and willfully discriminated against Plaintiff

on the basis of his age concerning Plaintiff's termination of employment." (Doc. # 10, at ¶ 6). In Count I of his Amended Complaint, Plaintiff asserts that Defendant's actions toward Plaintiff violate 29 U.S.C. § 621, *et seq.* (Doc. # 10, at ¶ 7). Count II of Plaintiff's Amended Complaint contains Plaintiff's assertion that Defendant's actions resulted in a breach of contract (Doc. # 10, at ¶ 15). Finally, in Count III of his Amended Complaint, Plaintiff asserts that Defendant's actions towards Plaintiff violate Ohio Rev.Code § 4101.17 (Doc. # 10, at ¶ 18).

In its Motion to Dismiss or Stay (Doc. # 12), Defendant asserts that Plaintiff has failed to meet the requirements of § 14(b) of the Age Discrimination in Employment Act of 1967 (ADEA), in that Plaintiff allegedly failed to resort to the appropriate state remedies prior to filing suit under the ADEA. As a result of said failure, Defendant asserts that this action must be dismissed or these proceedings must be stayed.

In its Motion to Dismiss Count III of Plaintiff's Amended Complaint (Doc. # 15), Defendant asserts that Plaintiff has elected to pursue an administrative remedy with the Ohio Civil Rights Commission (OCRC), and thus, as a matter of Ohio law, he is barred from pursuing the judicial remedy provided by Ohio Rev.Code § 4101.17.

Finally, in its Motion for Preliminary Injunction or Summary Judgment (Doc. # 19), Defendant asserts that "[i]n return for valuable consideration, Plaintiff knowingly and voluntarily executed a contract waiving any and all claims he might have against the Defendant arising out of his employment." Defendant contends that there is no genuine issue of material fact as to the validity of the agreement signed by Plaintiff and that Defendant is entitled to enforcement of the agreement as a matter of law. In the alternative, Defendant contends that it is at least entitled to a preliminary injunction until such time as the validity of the contract can be determined. The Court will consider each of Defendant's motions seriatim.

## I. DISCUSSION

### A. *Defendant's Motion to Dismiss or Stay (Doc. # 12)*

■ The Court will first consider Defendant's Motion to Dismiss or Stay (Doc. # 12). As previously discussed, in said motion Defendant asserts that Plaintiff has failed to meet the requirements of § 14(b) of the ADEA as set forth in 29 U.S.C. § 633(b).

Section 633(b) of Title 29 of the United States Code provides in pertinent part:

> In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under Section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated....

Basically, Defendant contends that although the state of Ohio does have a law prohibiting discrimination in employment because of age and has established a state authority (the Ohio Civil Rights Commission (OCRC)) to grant relief, the Plaintiff has failed to commence proceedings with said authority. This Court finds Defendant's argument to be without merit.

On April 4, 1986, the EEOC referred Plaintiff's EEOC charge to the OCRC in order to meet the referral requirements of § 14 of the ADEA (Doc. # 14, Exh. A). Plaintiff's Complaint in this action was not filed until June 12, 1986, more than sixty days after proceedings were commenced with the OCRC. Thus, Plaintiff has met the requirements of 29 U.S.C. § 633(b). Accordingly, the Court concludes that Defendant's Motion to Dismiss or Stay (Doc. # 12), must be and hereby is overruled in its entirety.

■ In his Memorandum in Opposition to Defendant's Motion to Dismiss or Stay (Doc. # 14), Plaintiff asserts that Defendant's claim regarding Plaintiff's alleged failure to meet the requirements of 29

U.S.C. § 633(b) was patently frivolous and that Defendant continued to prosecute said claim even after the EEOC's notice of referral to the OCRC was hand-delivered to defense counsel. As a result of Defendant's actions in continuing to prosecute said claim, Plaintiff asks this Court to award him reasonable attorney's fees in defending against Defendant's Motion to Dismiss or Stay. If Plaintiff still desires such a sanction, Plaintiff should file a specific request with this Court accompanied by an affidavit setting forth the computation in terms of hours expended, hourly rate and the specific reason for which each item of time was expended.

**B.** *Defendant's Motion to Dismiss Count III of Plaintiff's Amended Complaint (Doc. # 15)*

█ The Court will next consider Defendant's Motion to Dismiss Count III of Plaintiff's Amended Complaint (Doc. # 15). Basically, Defendant argues that the fact that a charge was filed on Plaintiff's behalf with the OCRC (pursuant to Ohio Rev.Code § 4112.05) precludes Plaintiff's claim under Ohio Rev.Code § 4101.17. For the reasons briefly set forth below, the Court concludes that Defendant's argument is without merit.

> As noted by the Ohio Supreme Court: The Ohio statutory scheme concerning discrimination is somewhat unusual. Three sections of the Revised Code provide remedies for age-based employment discrimination. R.C. 4101.17 is addressed solely to age discrimination and allows an aggrieved employee to institute a civil action in any court of competent jurisdiction. R.C. 4112.02 is a more inclusive anti-discrimination statute and also provides a private cause of action for age discrimination. Finally, R.C. 4112.05 allows an individual to enforce those rights created by R.C. 4112.02 administratively rather than judicially by filing a charge with the OCRC. Each of these avenues of relief provides that it is exclusive and, that once an action is instituted thereunder, a plaintiff is barred from bringing an action under either of the other two provisions. Thus, Ohio's

statutory scheme requires an election from among these remedies.

*Morris v. Kaiser Engineers, Inc.,* 14 Ohio St.3d 45, 46, 471 N.E.2d 471, 473 (Ohio 1984). Defendant contends that when the EEOC referred Plaintiff's charge to the OCRC, said referral constituted a filing under Ohio Rev.Code § 4112.05. In other words, Defendant asserts that Plaintiff elected to seek an administrative remedy under Ohio Rev.Code § 4112.05, and thus, is precluded from seeking a judicial remedy under 4101.17. The key issue with regard to this motion is whether or not a charge filed with the OCRC solely for purposes of meeting the requirements of § 14 of the ADEA, precludes a plaintiff from subsequently seeking a judicial remedy under Ohio Rev.Code § 4101.17.

While the Ohio Supreme Court has not been faced with the situation in which a plaintiff first filed with the OCRC (for purposes of meeting the requirements of the ADEA) and *then* filed suit under § 4101.17 of the Ohio Revised Code, the Court has dealt with a situation in which a filing pursuant to Ohio Rev.Code § 4101.17 was *followed* by a filing under Ohio Rev.Code § 4112.05. In *Morris,* the Ohio Supreme Court held that "[a] claimant who has previously filed an age discrimination action under R.C. 4101.17 is *not* barred from filing a claim with the Ohio Civil Rights Commission pursuant to R.C. 4112.05 in order to satisfy the mandatory prerequisite to an action under the federal Age Discrimination in Employment Act." *Id.* at 45, 471 N.E.2d at 472 (syllabus) (emphasis added). Thus, while as a general rule, it is true that "Ohio's statutory scheme requires an election" between Ohio Rev.Code § 4112.05 and Ohio Rev.Code § 4101.17, the Ohio Supreme Court appears to have carved out an exception in situations in which the filing under § 4112.05 is merely intended to meet the requirements of the ADEA. *Id.* at 46, 471 N.E.2d at 473–74. If this Court were to accept Defendant's position, an Ohio plaintiff's ability to join state and federal claims for age discrimination would be solely dependent upon whether or not the plaintiff *first* filed his/her state *judicial* claim.

This Court finds such a distinction to be absurd.

Based upon the foregoing, the Court concludes that if faced with the issue before this Court, the Ohio Supreme Court would conclude that a claimant who has previously filed a claim with the OCRC for purposes of meeting the requirements of the ADEA, is *not* precluded from filing an age discrimination action under Ohio Rev.Code § 4101.17.[1] Based upon the foregoing, the Court concludes that Defendant's Motion to Dismiss Count III of Plaintiff's Amended Complaint must be and hereby is overruled in its entirety.

## C. Defendant's Motion for Preliminary Injunction or Summary Judgment (Doc. # 19)

Finally, the Court will consider Defendant's Motion for Preliminary Injunction or Summary Judgment (Doc. # 19). In said motion, Defendant asserts that "[i]n return for valuable consideration, Plaintiff knowingly and voluntarily executed a contract waiving any and all claims he might have against the Defendant arising out of his employment." (Doc. # 19). Defendant contends that "there is no genuine issue of material fact and DP & L [therefore] is entitled to enforcement of the agreement as a matter of law." (Doc. # 19, at 4, n. 2). For the reasons briefly set forth below, this Court concludes that genuine issues of material fact do exist as to the validity of the agreement, and thus, Defendant is not entitled to enforcement of the agreement as a matter of law.[2]

### 1. The Applicable Law

Rule 56 of the Federal Rules of Civil Procedure governs the disposition of motions for summary judgment. Rule 56(c) states in pertinent part:

> The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The United States Supreme Court has concluded that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, in the case at bar, this Court must determine whether genuine issues of material fact exist as to the validity of the agreement allegedly entered into between Plaintiff and Defendant.

### 2. A Brief Overview of Facts

Defendant's Motion for Summary Judgment is based upon the existence and validity of a waiver executed by Plaintiff. There appears to be no dispute between the parties with regard to certain facts related to the circumstances surrounding the execution of said waiver. On October 11, 1985, Plaintiff, an employee of DP & L, was informed of his termination by his

---

**1.** The Court finds support for its conclusion in the recent case of *Lafferty v. Coopers & Lybrand*, 841 F.2d 1126 (6th Cir.1988) (table) (LEXIS, Genfed library, Courts file). In *Lafferty*, the Sixth Circuit concluded that "[t]here is no indication that Ohio intended to bar a plaintiff who went to the EEOC, seeking no remedy from the Ohio Civil Rights Commission, from pursuing a claim under section 4101.17 where filing with the EEOC is required for the filing of a federal claim." The court specifically noted that such an "interpretation would effectively mean that Ohio barred federal court pendent jurisdiction of claims under section 4101.17." The Sixth

Circuit simply could not believe that such was "the result envisioned by the Ohio legislature."

**2.** The Court notes that the Defendant moved in the alternative for a preliminary injunction enjoining Plaintiff from pursuing his claims against Defendant until the validity of the parties' agreement may be finally adjudged (Doc. # 19, at 1). As the Court this day has determined that it will stay trial on the underlying age discrimination claim pending trial on the question of the validity of the parties' agreement/release, the Court concludes that Defendant's Motion for a Preliminary Injunction must be and hereby is deemed moot.

superior, Willie Hall (Doc. # 19, at 2; Doc. # 20, at 1). During his termination interview, Plaintiff was given a copy of the alleged waiver (Doc. # 19, at 2; Doc. # 20, at 2). Plaintiff's termination occurred on a Friday and he was given at least until the following Monday (October 14, 1985) to return the waiver to Mr. Hall (Doc. # 19, at 3; Doc. # 20, at 2). Subsequently, Plaintiff took the waiver home, discussed its terms with his wife, and signed it (Doc. # 19, at 3; Doc. # 20, at 3). On October 12, 1985, Plaintiff placed the signed waiver on Mr. Hall's desk (Doc. # 19, at 3; Doc. # 20, at 3). Over the next five months, Plaintiff accepted the funds provided for under the waiver (Doc. # 19, at 3; Doc. # 20, at 3).

### 3. The Validity of Plaintiff's Waiver

In determining whether or not the waiver executed by the Plaintiff in this case was in fact valid, the Court must consider three issues. *First,* the Court must examine whether or not the alleged waiver was "supported by adequate consideration." *Runyan v. NCR Corp.,* 573 F.Supp. 1454, 1459 (S.D.Ohio 1983) (*Runyan* I), *aff'd,* 787 F.2d 1039 (6th Cir.1986), *cert. denied,* 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986). *Second,* the Court must consider whether or not the waiver was "knowingly" executed by the Plaintiff. *Runyan v. National Cash Register Corp.,* 787 F.2d 1039, 1044 (6th Cir.1986) (*Runyan* II) cert. denied, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986). The Sixth Circuit simply does not wish those who have "little education and little understanding of their legal rights" to be taken advantage of by a more sophisticated employer. *Id. Third,* the Court must consider whether or not the waiver executed by Plaintiff was deliberately/voluntarily executed by the Plaintiff. *Id.* The Sixth Circuit will "not allow employers to compromise the underlying policies of the ADEA by taking advantage of a superior bargaining position or by overreaching." *Id.* at 1044–45. In other words, a waiver executed under duress is not valid.

■ The Court will first consider the question of whether Plaintiff's waiver "is supported by adequate consideration." *Runyan* I, 573 F.Supp. at 1459. In *Runyan* I, this Court concluded that in determining the adequacy of consideration, the Court must consider whether the employee "received something to which he did not already have an absolute right." *Id.* at 1460. Under the terms of the waiver executed by Plaintiff, Plaintiff would serve as a consultant to Defendant for a period of five months (Doc. # 19, Pitts' deposition, Exh. 6). During that period, Plaintiff would receive payments of $3,054.09 and the Defendant would continue to provide Plaintiff with health and life insurance. (Doc. # 19, Pitts' deposition, Exh. 6). The agreement specifically stated that "[i]n consideration for the payments to you mentioned above, this letter agreement will also constitute a complete waiver and release of any and all claims of whatever nature you might have against the Company arising directly or indirectly from your employment as Supervisor." (Doc. # 19, Pitts' deposition, Exh. 6). In this case, the Plaintiff clearly received something to which "he did not already have an absolute right." *Id.* In the absence of the agreement signed by Plaintiff, Plaintiff would not have had the right to employment as a consultant or to the payments and fringe benefits which accompanied said employment.

■ The Court will *next* consider whether the Plaintiff *knowingly* executed the waiver agreement. In considering whether the Plaintiff knowingly waived his rights under the ADEA, the Court finds several factors to be important. *First,* the Court notes that at the time Plaintiff executed his waiver, a "bona fide *factual* dispute" existed between Plaintiff and Defendant as to whether Defendant had violated the ADEA. *Runyan* II, 787 F.2d at 1044. Plaintiff admits that at the time that he executed the waiver, he believed that he had been terminated because of his age, and he knew that such a termination was illegal (Doc. # 19, Pitts' deposition, at 56–57). In other words, Plaintiff understood that he did have the right to sue Defendant. *Second,* the Court notes that Plaintiff understood that in executing the waiv-

er, he was waiving his right to sue the Defendant. Plaintiff admits that he knew that the agreement he signed "constituted a waiver of ... [his] claims against the company, including any age claim." (Doc. # 19, Pitts' deposition, at 73). This admission is corroborated by the fact that the language of the agreement signed by Plaintiff was clear.[3] Plaintiff's admission is further corroborated by the fact that Plaintiff is a well-educated person who is experienced in the ways of the business world. (Doc. # 19, Pitts' deposition, at 31–36; Doc. # 19, Pitts deposition, Exh. 4). Based upon the foregoing, the Court concludes that there is no genuine issue of material fact as to the fact that Plaintiff knew that he had a claim for age discrimination against Defendant and that he knew that in executing the agreement provided by Defendant, he was waiving said claim.

*Finally*, the Court must consider whether or not Plaintiff *voluntarily* executed the waiver. As noted by the Sixth Circuit "[i]n determining whether an ADEA settlement and release is valid, a court should apply the principles expressed by Justice Frankfurter that encourage 'amicable settlement of honest differences ... where overreaching or exploitation is not inherent in the situation.'" *Runyan* II, 787 F.2d at 1045. In determining whether or not Plaintiff voluntarily waived his rights under the ADEA, this Court must apply ordinary contract principles. *Id.* at 1044 n. 10.

When considering the validity of a contract, the Ohio courts have long recognized the defense of duress. The Ohio Supreme Court has recognized that "[t]he real and ultimate fact to be determined in every case is whether the party affected really had a choice; whether he had his freedom of exercising his will." *Tallmadge v. Robinson*, 158 Ohio St. 333, 340, 109 N.E.2d 496, 500 (1952). Several appellate courts have recognized the defense of economic duress, or business compulsion. *See Andres v. City of Perrysburg*, 47 Ohio App.3d 51, 546 N.E.2d 1377; *Mastran Associates v. State*, slip op., 1987 WL 9489 (Ohio Ct. App. Mar. 31, 1987) (LEXIS; States library; Ohio file); *Mancino v. Friedman*, 69 Ohio App.2d 30, 429 N.E.2d 1181, 1186 (Ohio Ct.App.1980). "[T]he defense of economic duress, or business compulsion, arises where one individual, acting upon another's fear of impending financial injury, *unlawfully* coerces the latter to perform an act under circumstances which prevent his exercise of free will." *Mancino*, 69 Ohio App.2d at 36, 429 N.E.2d at 1186 (emphasis added). Thus, in the case at bar, the Court must consider whether there is a genuine issue of material fact as to the following issues. *First*, whether in executing the waiver, Plaintiff was acting under fear of impending financial injury. *Id.* at 37, 429 N.E.2d at 1186. *Second*, whether the Defendant "effectively prevented ... [plaintiff] from exercising his free will in this matter." *Id. Third*, whether the method of coercion utilized by the Defendant was unlawful. *Id.*

Plaintiff asserts that he "was coerced and placed under economic duress by Defendant and by the job consulting firm it hired." (Doc. # 20, at 7). Plaintiff's claims of duress are based upon the comments of Mr. Hall during Plaintiff's termination interview of October 11, 1985, and the information provided by two job placement consultants from Challenger, Gray and Christmas, who spoke with the Plaintiff immediately after his termination interview. Plaintiff contends that Mr. Hall placed Plaintiff under duress by informing Plaintiff that if he did not sign the waiver agreement, he would be terminated on October 14, 1985, and would receive no further compensation. Plaintiff further asserts that the job placement consultants were acting as the agents of Defendant when they informed the Plaintiff that he should not call an attorney or initiate a law suit against Defendant.

---

**3.** The agreement signed by Plaintiff states in pertinent part:

> In consideration for the payments to you mentioned above, this letter agreement will also constitute a complete waiver and release of any and all claims of whatever nature you might have against the Company arising directly or indirectly from your employment as Supervisor.

(Doc. # 19, Pitts' deposition, Exh. 6).

■ The Court first notes that it cannot conclude that the statements of Mr. Hall, the Plaintiff's superior, are sufficient to support the defense of economic duress. As previously discussed, one of the elements of economic duress is *unlawful coercion.*

> "Duress involves illegality, and implies that a person has been unlawfully constrained by another to perform an act under circumstances which prevent the exercise of free will, and it can never constitute fraud or duress to do as and what a person has the legal right to do, whatever the pecuniary consequences may be to those with whom he deals."

*Id.* at 36, 429 N.E.2d at 1186 (quoting *Bartlett v. Richardson Co.,* 27 Ohio App. 263, 270–271, 161 N.E. 403 (1927)). Even assuming *arguendo,* that Mr. Hall did tell Plaintiff that if he failed to sign the waiver agreement, he would receive no additional compensation from the Defendant, Plaintiff's claim of economic duress is without merit for Mr. Hall's statement was *not* unlawful. Defendant was simply not obligated to provide Plaintiff with compensation following his termination.

■ While the Court concludes that the statements of Mr. Hall, the Plaintiff's superior, are not sufficient to support a defense of economic duress, the Court concludes that there are genuine issues of material fact as to whether or not the statements of the job placement consultants and/or the information provided by said consultants are sufficient to support a defense of economic duress. There is no dispute as to the fact that the services of the job consultants were provided by Defendant. This Court concludes that a genuine issue of material fact does exist as to whether or not the consultants were acting as the agents of Defendant. The Plaintiff testified that when he brought up the issue of age dis-

crimination at his initial meeting with the job placement consultants, the consultants told him "You should do nothing. If you do anything, you'll never get a job." (Doc. # 19, Pitts deposition, at 56). Plaintiff further testified that the job placement consultants stated "Don't consult an attorney. Just—because if you do, you are dead." (Doc. # 19, Pitts deposition, at 57). It is Plaintiff's contention that when he mentioned age discrimination, the job placement consultants said "Don't because if—if we get you a job and they consult Dayton Power & Light, you are a non-entity." (Doc. # 19, Pitts deposition, at 57). With regard to the waiver itself, Plaintiff testified that the job placement consultants indicated to him that "if you [Plaintiff] don't sign it, you are not going to get a job." (Doc. # 19, Pitts deposition, at 62). Plaintiff asserts that he feared that if he did not sign the waiver, he would not be able to obtain employment with another firm. (Doc. # 19, Pitts deposition, at 63). The point is, that taken as a whole, the statements which Plaintiff attributes to the job placement consultants could be construed as a veiled threat of retaliation.

Based upon the evidence on the record, the Plaintiff may well have executed the waiver because he feared impending financial injury, *i.e.,* the inability to secure another job. Further, it can be reasonably inferred that the Defendant effectively prevented the Plaintiff from exercising his free will. In other words, it may reasonably be inferred that Plaintiff feared that if he took legal action, Defendant would retaliate and prevent Plaintiff from getting another job. Finally, if the Defendant was indeed threatening to retaliate against Plaintiff for Plaintiff's exercise of his rights under the ADEA, Defendant's threat was indeed unlawful.[4] It can reasonably be inferred from the statements of the job placement consultants that any at-

---

**4.** Section 623(d) of Title 29 of the United States Code states:

It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to·discriminate against any member thereof or applicant

for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

tempt by Plaintiff to enforce his rights would result in attempts by Defendant to sabotage future employment.[5]

Based upon the foregoing, the Court concludes that genuine issues of material fact do exist as to whether or not Plaintiff executed the waiver agreement while under economic duress. Accordingly, as this Court cannot conclude that Plaintiff's waiver was valid as a matter of law, the Court concludes that Defendant's Motion for Summary Judgment must be overruled in its entirety.[6]

In conclusion, this Court finds that Plaintiff's claims of age discrimination cannot be considered until the validity of the waiver signed by Plaintiff has been determined. As this Court has determined that Plaintiff knowingly waived his right to sue Defendant as a matter of law, the only issue remaining before the Court regarding Plaintiff's waiver is the issue of duress. The Court had previously set this action for trial on January 23, 1989. Trial will indeed begin on that date, but, *solely* on the issue of duress. If the jury concludes that Plaintiff acted under economic duress in executing the waiver, trial will be set for Plaintiff's claims of age discrimination. If, on the other hand, the jury concludes that Plaintiff did *not* act under economic duress in executing the waiver, this action will be terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division.

---

**5.** The Court notes that the job placement consultants allegedly warned Plaintiff that even the mere act of consulting an attorney would harm his future employment prospects. (Doc. #19, Pitts deposition, at 57). This Court questions how, in the absence of some retaliatory action by the Defendant, the mere act of consulting an attorney could possibly harm Plaintiff's chances of obtaining new employment. The only way that a potential employer could discover such a consultation (or for that matter any legal action taken by Plaintiff against Defendant) would be if Defendant told said potential employer of Plaintiff's actions.

**6.** Defendant asserts that even if the Plaintiff "could prove he signed the release under duress, his subsequent acceptance of the benefits of the agreement without objection constituted a ratification of the release." (Doc. #19, at 13 n. 4). The Court finds this argument to be without merit. There is no indication that if Plaintiff was in fact under duress when he signed the waiver, he was ever released from said duress. *See generally Doolittle & Chamberlain v. McCullough,* 7 Ohio St. 299, 307 (1857). There is no indication that if Plaintiff feared retaliatory action by Defendant that said fear was ever removed.