■ OKSANA STASYSZYN, Appellant, v SUTTON EAST ASSOCIATES, Respondent and Third-Party Plaintiff-Respondent, and DAVID EDELSTEIN et al., Respondents. NORDHEIMER BROTHERS COMPANIES, INC., Third-Party Defendant-Respondent.—Order of the Supreme Court, New York County (William J. Davis, J.), entered on or about July 13, 1989, which, *inter alia,* denied plaintiff's motion for summary judgment, is unanimously reversed, on the law, to the extent appealed from, plaintiff's motion for summary judgment granted and the matter is remanded for an assessment of damages and a determination of the respective liability of the various defendants, with costs and disbursements.

Between 1970 and 1980, plaintiff was a hotel stabilized tenant at 330 East 56th Street in Manhattan. Defendants are three successive owners of the building. Defendant Sutton East Associates (SEA) purchased the premises in 1983 with the intention of renovating and converting the structure into a modern hotel facility. Thereafter, it undertook to vacate the building of its tenants and, in that connection, entered into a stipulation with plaintiff, dated August 23, 1984, pursuant to which she agreed to vacate temporarily her room during construction, withdraw various claims in exchange for which SEA would pay her the sum of $18,000 during each of the maximum of two years that she was not in possession of the premises and would restore her to designated rooms in the building not later than August 31, 1986. In addition, SEA

stated that in the event it were to breach the terms of the agreement "by (1) failing to have [tenant's] rooms in a habitable condition and ready for occupancy by the dates set forth herein or (2) by failing to deposit the required sums in the escrow account of [SEA's] attorneys by the dates set forth herein or (3) by failing to deliver possession to [tenant] of the new rooms, by the dates set forth herein, then [SEA] agrees that the Sutton East Associates, a partnership, and the partners thereof shall be individually liable for any damages incurred by [tenant] as a result of said breach."

The interior of the hotel was subsequently demolished, but rehabilitation was never completed. Some 18 months after executing the stipulation, and without having restored plaintiff to possession, SEA sold the building to defendant Sutton Hotel Associates (SHA). When SHA initially obtained ownership of the premises, it continued the interior demolition commenced by SEA. However, in January of 1987, SHA was served with a stop-work order by the Department of Buildings, and all rehabilitation work ceased. In July of 1988, SHA transferred the structure to defendant W. M. Associates, L. P. It is undisputed that the building has never been renovated and remains uninhabitable. Plaintiff instituted the instant action for monetary damages and injunctive relief after it became evident that defendants were not going to render the hotel fit for occupancy so that she could resume residence therein. She then moved, in part, for summary judgment on the issue of liability in response to which defendants advanced a claim that compliance with the stipulation is a legal impossibility and that, moreover, the doctrine of laches is applicable based upon her failure to seek timely enforcement of her right, as of September 1, 1986, to recover possession of the premises in question. The current owner, W. M. Associates, also urges that it is not bound by any of the terms of the stipulation. There is no merit to any of defendants' claims, and plaintiff is entitled to summary judgment as to liability.

Contrary to the determination of the Supreme Court, there are no unresolved factual issues precluding summary judgment on the issue of liability. In that regard, the provisions of the stipulation are clear, and it is uncontested that defendants have failed to comply with their undertakings thereunder. Defendants assert that the revocation by the Department of Buildings of the permit to construct a transient hotel caused the stipulation to be impossible to perform. However, even if we were to accept as true SHA's conclusory allegations that it could not procure financing for the project in the form de-

manded by the Department of Buildings (that is, 49% hotel rooms, 51% apartments), the law is well established that economic inability to perform contractual obligations, even to the extent of insolvency or bankruptcy, is simply not a valid basis for excusing compliance *(407 E. 61st Garage v Savoy Fifth Ave. Corp.,* 23 NY2d 275; *Fiur Co. v Ataka & Co.,* 71 AD2d 370; *Pettinelli Elec. Co. v Board of Educ.,* 56 AD2d 520, *affd* 43 NY2d 760). As the Court of Appeals observed in *407 E. 61st Garage v Savoy Fifth Ave. Corp. (supra,* at 281), "[g]enerally, however, the excuse of impossibility of performance is limited to the destruction of the means of performance by an act of God, *vis major,* or by law". The court specifically therein excluded financial difficulty or economic hardship as ever providing a ground to avoid compliance with a contract. In the present situation, SHA is not contending that it cannot obtain a permit from the Department of Buildings to renovate the building, but, rather, that it would be economically disadvantageous for it to refurbish the premises in the manner mandated by that agency. Yet, absent an express contingency clause in the agreement allowing a party to escape performance under certain specified circumstances, compliance is required even where the economic distress is attributable to the imposition of governmental rules and regulations or the inability to secure financing *(see, Ogdensburg Urban Renewal Agency v Moroney,* 42 AD2d 639). Consequently, no viable question of fact has been raised with respect to any defense of legal impossibility.

There is, similarly, no substance to any of defendants' other arguments. Paragraph 17 of the stipulation states that "[t]his agreement is binding upon [SEA], all real parties in interest, all heirs, successors and assigns, and [SEA] warrants that should it relinquish or forfeit title to the hotel premises that it is obliged to give notice of this agreement to any subsequent, purchasers, mortgagors or other persons or entities with right, title or claim to an interest in the premises, and that it shall give immediate notice to [tenant's] attorney of any contract for sale of the premises." Moreover, SEA committed itself in paragraph 6 to "execute simultaneous with the execution of this agreement a duly acknowledged, rent stabilized standard form apartment lease between it and [tenant] for the new rooms at the hotel" and also to record this lease with the City Register. According to the Court of Appeals in *Orange & Rockland Utils. v Philwold Estates* (52 NY2d 253, 262), "[w]hether a covenant restricting real property is personal or runs with the land depends upon three factors: (1) whether

the parties intended its burden to attach to the servient parcel and its benefit to run with the dominant estate, (2) whether the covenant touches and concerns the land, and (3) whether there is privity of estate". Since the stipulation specifically declares that the instrument is to be binding on all subsequent purchasers, there can be no doubt that the first criterion is clearly met. Further, the burden imposed on the real property was to make the premises habitable and to restore plaintiff to possession so the covenant certainly concerns the property. Finally, there is a direct succession of conveyances from SEA to SHA to W. M. Associates such that there exists the necessary privity of estate. Indeed, in *Arroyo v Marlow* (122 AD2d 821), which involves facts almost identical to those herein, the court found that there was privity between plaintiffs tenants therein and defendant who had acquired the premises from the third-party defendants, and, thus, the covenant ran with the land. In any event, "the transferee of real property takes the premises subject to the conditions as to tenancy * * * if the transferee has notice of the existence of the leasehold", and "possession of premises constitutes constructive notice to a purchaser of the rights of the possessor" *(52 Riverside Realty Co. v Ebenhart,* 119 AD2d 452, 453; *see also, Bank of N. Y. v Hirschfeld,* 37 NY2d 501). Accordingly, neither SHA nor W. M. Associates may disclaim liability for a breach of the stipulation. As for defendants' claim of laches, it need only be noted that a party may, at its option, seek relief by either motion interposed in the underlying action or by a plenary action grounded upon the stipulation *(Teitelbaum Holdings v Gold,* 48 NY2d 51, 55). Since it is doubtful that plaintiff herein would have been able to obtain full redress for her damages pursuant to a proceeding to recover possession of the premises, her decision to commence the instant action rather than return to Civil Court is entirely reasonable. At any rate, the choice is hers, and she is not barred by res judicata, collateral estoppel or the Statute of Limitations from maintaining this action. Defendants, therefore, have failed to demonstrate any sort of laches.

Plaintiff's right to monetary damages and/or injunctive relief as a result of defendants' breach of the stipulation is evident, and the Supreme Court should have granted her motion for summary judgment on the issue of liability. This matter should, thus, be set down for an inquest at which her damages and, if appropriate, other remedies should be calculated, and defendants' respective responsibility should also be apportioned between them. Certainly, defendants' various lia-

bilities do not impinge upon plaintiff's right to recovery and are merely questions to be determined as between them. Concur—Kupferman, J. P., Ross, Milonas, Asch and Ellerin, JJ.