*864
 

 OPINION AND ORDER GRANTING, IN PART, PLAINTIFFS’ MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT’S MOTION FOR SUMMARY JUDGMENT, AND; DENYING PLAINTIFFS’ OBJECTION AS MOOT
 

 STEEH, District Judge.
 

 Plaintiffs General Motors Corporation (“GMC”), Woodbridge Corporation, Wood-bridge Foam Corporation, and Cartex Corporation (collectively ‘Woodbridge”) move for summary judgement of: (1) defendant Paramount Metal Products Company’s counterclaims of fraud, breach of a duty of good faith and fair dealing, and punitive damages; (2) defendant’s counterclaim for unliquidated damages, and; (3) defendant’s affirmative defenses of contractual bar, contractual satisfaction by past-performance, compromise/settlement, accord and satisfaction, adhesion contract, and economic impossibility.. Defendant Paramount moves for summary judgment of plaintiffs’ claims of breach of purchase order contracts and economic duress. For the reasons set forth below, plaintiffs’ motion for summary judgment will be GRANTED, IN PART, as to defendant’s counterclaims of fraud, breach of a duty of good faith and fair dealing and punitive damages, as well as defendant’s affirmative defenses of adhesion contract and economic impossibility. The remainder of plaintiffs’ motion for summary judgment will be DENIED. Defendant’s motion for summary judgment will be DENIED. Plaintiffs’ objection to the submission of supplemental authority will be DENIED as moot.
 

 BACKGROUND
 

 The circumstances underlying this lawsuit have been set forth in previous opinions and orders, and will be reiterated herein only to the extent necessary to adjudicate the instant motions. Plaintiffs GMC and Woodbridge contracted with defendant Paramount under various purchase orders for the manufacture of automobile seat frames for ultimate installation into GMC vehicles. Paramount was the plaintiffs’ sole source for these seat frames for the 1997 model year, with contracts extending through the year 2000. Plaintiffs used a “just-in-time” supply system to maintain minimum inventories, making the plaintiffs dependent upon continuous shipments of seat frames from Paramount. In the Fall of 1997, Paramount was struggling financially. At the same time, GMC announced it would be selling its seat frame business. Paramount allegedly asked GMC to either purchase Paramount for $18.0 million or grant Paramount $10.0 million in retroactive price increases, or else Paramount would be forced to immediately cease seat frame production. According to GMC and Woodbridge, if they did not continue to receive seat frames from Paramount, GMC would be unable to continue automobile production and would incur, substantial daily losses. Plaintiffs allege they therefore granted defendant certain price adjustments, despite Paramount’s continuing threats to stop production.
 

 After considerable negotiations, the parties executed a December 11, 1997 Accommodation Agreement in Cleveland, Ohio which provided
 
 inter alia
 
 that: $488,935.00 would be released to Paramount from escrow as a reversal of ceratin improper debits; Woodbridge would pay Paramount a $4.4 million retroactive price increase, and; Paramount would be paid a $2.13 prospective price increase on certain parts effective January 1, 1998. On June 22, 1998, the plaintiffs found an alternate seat frame supplier. On June 24, 1998, the plaintiffs filed this lawsuit seeking to invalidate the Accommodation Agreement on the basis of economic duress, and to enforce the pricing set forth in pre-existing purchase orders. Paramount filed counterclaims seeking to enforce the Accommodation Agreement and alleging the plaintiffs are liable in fraud in the inducement for executing the Accommodation Agreement without a present intent to perform
 
 *865
 
 the Agreement. Paramount alleges the plaintiffs have failed to pay $500,000.00 of the $4.4 million price increase promised under the Accommodation Agreement, as well as another $2.0 million owing under the Accommodation Agreement for parts and tools. Paramount also alleges it has incurred $13.5 million in unliquidated damages.
 

 Plaintiffs seek to invalidate the Accommodation Agreement on the basis of economic duress, and to enforce the purchase order prices that existed prior to the Accommodation Agreement. Paramount maintains the plaintiffs are liable for breaching the Accommodation Agreement, and for fraud in the inducement because the plaintiffs intended to dishonor the Accommodation Agreement once they found an alternate seat frame supplier. Specifically, the plaintiffs allege: breach of GMC purchase orders (Count I); breach of Woodbridge purchase orders (Count II); breach of GMC tooling purchase orders (Count III); conversion of GMC tooling (Count IV); economic duress in executing the Accommodation Agreement (Count V); constructive trust (Count VI); unjust enrichment (Count VII), and; recission of the Accommodation Agreement (Count VIII). By way of remaining counterclaims, defendant Paramount alleges: fraud (Count I); breach of contract (Count II); breach of a duty of good faith and fair dealing (Count III); defamation (Count IV), and; punitive damages (Count VII).
 

 STANDARD OF REVIEW
 

 Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment “forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.”
 
 See FDIC v. Alexander,
 
 78 F.3d 1103, 1106 (6th Cir.1996). The Supreme Court has affirmed the court’s use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut.
 
 Celolex Corp. v. Catrett,
 
 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);
 
 see also Kutrom Corp. v. City of Center Line,
 
 979 F.2d 1171, 1174 (6th Cir.1992).
 

 The standard for determining whether summary judgment is appropriate is “‘whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.’ ”
 
 Winningham v. North Am. Resources Corp.,
 
 42 F.3d 981, 984 (6th Cir. 1994) (citing
 
 Booker v. Brown & Williamson Tobacco Co.,
 
 879 F.2d 1304, 1310 (6th Cir.1989)). The evidence and all inferences therefrom must be construed in a light most favorable to the non-moving party.
 
 Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
 
 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986);
 
 Enertech Elec., Inc. v. Mahoning County Comm’r,
 
 85 F.3d 257, 259 (6th Cir.1996);
 
 Wilson v. Stroh Cos., Inc.,
 
 952 F.2d 942, 945 (6th Cir.1992).;
 
 see also Hartleip v. McNeilab, Inc.,
 
 83 F.3d 767, 774 (6th Cir. 1996). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with “specific facts showing that there is a genuine issue for trial.”
 
 First Natl Bank v. Cities Serv. Co.,
 
 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968);
 
 see also Adams v. Philip Morris, Inc.,
 
 67 F.3d 580, 583 (6th Cir.1995). The nonmoving party cannot rest on its pleadings to avoid summary judgment, but must support its claims with some probative evidence.
 
 See Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);
 
 Kraft v. United States,
 
 991 F.2d 292, 296 (6th Cir.),
 
 cert. denied,
 
 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).
 

 
 *866
 

 I. PLAINTIFFS’MOTION FOR SUMMARY JUDGMENT
 
 ■
 

 Plaintiffs GMC and Woodbridge move for summary judgment of Paramount’s counterclaims of fraud, breach of a duty of good faith and fair dealing, and punitive damages. Plaintiffs also move for summary judgment of Paramount’s counterclaim for unliquidated damages. Plaintiffs further move for summary judgment of Paramount’s affirmative defenses of accommodation, accord and satisfaction, settlement, adhesion contract, and economic impossibility of performance.
 

 A Fraud
 

 Paramount’s fraud in the inducement counterclaim is directed at the Accommodation Agreement executed in Cleveland, Ohio. The Accommodation Agreement provides at paragraph 18: “This Agreement shall be governed by, and be construed and interpreted in accordance with, the laws of the State of Ohio, without regard to principles regarding conflicts of laws.” Applying the choice of law provisions of the forum state,
 
 see Banek Inc. v. Yogurt Ventures U.S.A, Inc.,
 
 6 F.3d 357, 360-361 (6th Cir.1993), Michigan law permits parties to choose for themselves which state’s law will govern their contract.
 
 See Johnson v. Ventra Group, Inc.,
 
 191 F.3rd 732, 738-739 (6th Cir.1999);
 
 Liberty Mutual Ins. Co. v. Vanderbush Sheet Metal Co.
 
 512 F.Supp. 1159, 1169 (E.D.Mich.1981). Accordingly, Ohio law is controlling.'
 

 Ohio’s version of the Uniform Commercial Code (“UCC”) does not displace common law actions for fraud.
 
 See Ohio Savings Bank v. H.L. Vokes Company,
 
 54 Ohio App.3d 68, 70, 560 N.E.2d 1328 (1989) (involving claim for fraudulent inducement). Fraud in the inducement is an “exception” to the general rule that a fraud claim must be based upon a past or existing fact.
 
 See Dunn Appraisal Co. v. Honeywell Information Systems, Inc.,
 
 687 F.2d 877, 883 (6th Cir.1982) (citing
 
 Monaghan v. Rietzke,
 
 85 Ohio App. 497, 89 N.E.2d 159 (1949)). Actually, “the mental attitude and the then intent of the one who makes the representation are existing facts and the only difficulty is one of proof.”
 
 Tibbs v. National Homes Construction Corp.,
 
 52 Ohio App.2d 281, 287, 369 N.E.2d 1218 (1977) (quoting
 
 Dozier v. Keller,
 
 73 Ohio App. 321, 321-322, 56 N.E.2d 288 (1944)). “[A] promise to perform in the future is not capable of being a representation that is the basis for fraud absent a demonstration that
 
 at the time it was made,
 
 the promisor intended not to perform the promise.”
 
 Greenstreet v. Bickers,
 
 97 Ohio App.3d 610, 614, 647 N.E.2d 214 (1994) (emphasis added).
 

 Construing the pleadings and evidence in a light most favorable to defendant Paramoimt, Paramount has failed to meet its burden of coming forward with specific facts showing that, at the time the Accommodation Agreement was executed on December 11, 1997, the plaintiffs did not intend to perform their obligations under the Accommodation Agreement.
 
 See First Nat’l Bank,
 
 391 U.S. at 270, 88 S.Ct. 1575;
 
 Adams,
 
 67 F.3d at 583. Paramount relies on the deposition testimony of GMC Director of Purchasing Dr. Michael Orris to support its claim that the plaintiffs did not intend on December 11, 1997 to honor the Accommodation Agreement. Dr. Orris testified, however, that GMC did intend to perform the Accommodation Agreement in December 1997, January 1998 and February 1998.
 
 See
 
 Dr. Orris’s April 20, 1999 Deposition Transcript, at 49-50. Dr. Orris continued at his deposition:
 

 Q. [Did GMC intend to fulfill the obligations of the contract] [a]s of March 1998?'
 

 A. (by Dr. Orris) I can’t say. At some point in time, and I don’t know the exact timing, we entered into the Accommodation Agreement because we had no choice. At some point in time once we felt we were free and clear, then we started looking at what our options were.
 

 Q. What do you mean by free and clear?
 

 
 *867
 
 A. Once we no longer had the threat of production to deal where [sic].
 

 Q. Was it the intention then, of GM/Delphi that it would only perform under this Accommodation Agreement until the time that it was free and clear? A. I don’t know that that was expressly our intention. All I know is at some point we continued to review what our options were, and at some point once we felt that we were free and clear, then we started looking at what our other options were and we determined that we should file suit.
 

 Id.
 
 at 50-51.
 

 An express basis for the Accommodation Agreement was that “Paramount [had] informed Woodbridge and GM that it would cease production and shipment of parts effective November 30, 1997.” Accommodation Agreement, If B. The transition period covered by the Accommodation Agreement was “the period from the [December 11, 1997] execution of this Agreement until all production of the Component Products has been resourced, in no event to be after July 1, 1998.”
 
 Id.
 
 at 111. Paramount indeed “consented] to the resourcing of any one or more of the Component Parts at any time during the Transition Period”, and even “agree[d] to cooperate in such resourcing”.
 
 Id.
 
 at 118. The fact that the plaintiffs intended to find other seat frame vendors on and after December 11, 1997 is not evidence of fraud in the inducement, but indeed consistent with the intent of the Accommodation Agreement. GMC’s apparent decision to file a lawsuit against Paramount after finding another seat frame supplier and becoming “free and clear” of Paramount’s supply line does not evidence that the plaintiffs intended not to fully perform the Accommodation Agreement on December 11,1997.
 

 To the extent GMC delayed payments to Paramount in June 1998 and has since refused to make full payment under the Accommodation Agreement, such does not reflect the plaintiffs’ intent on December 11, 1997 at the time the contract was made.
 
 See Greenstreet,
 
 97 Ohio App.3d at 614, 647 N.E.2d 214. While there exists a possibility that the plaintiffs did not intend to perform on December 11, 1997, the possibility also exists that, consistent with Dr. Orris’ testimony, the plaintiffs first decided to challenge the validity of the Accommodation Agreement in March 1998, after three months of contractual performance. Indeed, the only evidence on this issue in the record supports an inference that GMC determined to avoid its obligations under the Accommodation Agreement only after it was executed. A jury verdict in favor of Paramount on the fraud in the inducement counterclaim would be premised on nothing more than speculation and conjecture. Without evidence in the record to support a legitimate conclusion that the plaintiffs intended not to perform the Accommodation Agreement on December 11, 1997, the plaintiffs are entitled to summary judgment of Paramount’s fraud in the inducement counterclaim as a matter of law.
 
 Greenstreet,
 
 97 Ohio App.3d at 614, 647 N.E.2d 214;
 
 Tibbs,
 
 52 Ohio App.2d at 287, 369 N.E.2d 1218;
 
 Winningham,
 
 42 F.3d at 984.
 

 B. Pimitive Damages
 

 In Ohio, the availability of punitive damages is controlled in part by statute:
 

 [Pjunitive or exemplary damages are not recoverable from a defendant in a tort action unless both of the following apply:
 

 (1) The actions or omissions of that defendant demonstrate malice, aggravated or egregious fraud, or insult, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.
 

 (2) The trier of fact has returned a verdict or has made a determination pursuant to division (B)(2) or (B) of this section of the total compensatory damages recoverable by the plaintiff from that defendant.
 

 O.R.C. § 2315.21(C). Punitive damages are recoverable in a breach of contract
 
 *868
 
 action only if a “breach of contract is accompanied by a connected, but independent tort involving fraud, malice or oppression.”
 
 Goldfarb v. Robb Report, Inc.,
 
 101 Ohio App.3rd 134, 140, 655 N.E.2d 211 (1995). “[P]unitive damages are not recoverable for a breach of contract unless there exists an independent willful tort characterized by personal hatred, ill will or a spirit of revenge, constituting actual malice.”
 
 Carrera
 
 v.
 
 Sandman,
 
 65 Ohio App.3d 422, 426, 584 N.E.2d 753 (1989).
 

 With summary judgment entering against Paramount on its fraud in the inducement counterclaim, Paramount’s punitive damages counterclaim for nonperformance under the Accommodation Agreement fails as a matter of law. Paramount cannot show that the plaintiffs’ alleged breach- of the Accommodation Agreement is connected to an actionable independent tort claim of fraud. Consequently, the plaintiffs are entitled to summary judgment of Paramount’s counterclaim for punitive damages.
 
 Goldfarb,
 
 101 Ohio App.3rd at 140, 655 N.E.2d 211;
 
 Carrera,
 
 65 Ohio App.3d at 426, 584 N.E.2d 753;
 
 Winningham,
 
 42 F.3d at 984.
 

 C. Breach of Duty of Good Faith and Fair Dealing
 

 In Ohio, and “[i]n the commercial context, the duty of good faith and fair dealing refers to ‘an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting’ ”.
 
 Sammarco v. Anthem Ins. Co., Inc.,
 
 131 Ohio App.3d 544, 555, 723 N.E.2d 128 (1998) (internal citation omitted). The duty may be recognized where there is a great financial disparity between the parties, or one party is in dire financial straits.
 
 Kruse v. Vollmar,
 
 83 Ohio App.3d 378, 386-387, 614 N.E.2d 1136 (1992).
 

 Defendant Paramount has not responded to the plaintiffs’ motion for summary judgment as it relates to the counterclaim of breach of a duty of good faith and fair dealing. Clearly, as evidenced by the wording of the Accommodation Agreement, the parties were aware of Paramount’s financial difficulties well before the Accommodation Agreement was drafted. Likewise, the parties’ knew their relative financial strengths and weaknesses. Absent evidentiary support for a finding that the plaintiffs took opportunistic advantage of Paramount in a way that could not have been contemplated by Paramount at the time the Accommodation Agreement was executed, GMC and Woodbridge are entitled to summary judgment of Paramount’s breach of a duty of good faith and fair dealing counterclaim as a matter of law.
 
 Sammarco,
 
 131 Ohio App.3d at 555, 723 N.E.2d 128;
 
 Kruse,
 
 83 Ohio App.3d at 386-387, 614 N.E.2d 1136;
 
 Winningham,
 
 42 F.3d at 984.
 

 D. Counterclaim for Unliquidated Damages
 

 Paramount’s expert David Linscott, a CPA, has submitted an August 3, 1999 report stating that Paramount is entitled to recover: lost profits and net losses from 1996 through June 30, 1998 of approximately $5.0 million; lqst profits after June 30, 1998 of $7.2 million; Paramount CEO Peter Kole’s lost salary of $1.275 million, and; lost opportunity costs of $48,288.00 resulting from the plaintiffs’ failure to pay $500,000.00 that remains owing under the Accommodation Agreement. Plaintiffs make a Daubert
 
 [1]
 
 challenge to Linscott’s report arguing the conclusions therein were not tested for reliability by another CPA. Plaintiffs’ own expert proffers documents to support the argument that, without an independent assessment of accuracy, Linscott’s report is unreliable and, therefore, inadmissible.
 

 “If scientific, technical, or other specialized knowledge will assist the trier
 
 *869
 
 of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.” Fed.R.Evid. 702. “While a proposed expert witness’ qualification to testify ‘in the form of an opinion or otherwise,’ Fed.R.Evid. 702, is unquestionably a preliminary factual determination for the trial court, Fed.R.Evid. 104(a), it is a determination which must be made upon the evidence of the witness’s qualifications, or lack thereof, and not upon the trial court’s personal views. When determining the competence of a witness to render an expert opinion, the trial judge should not rely on labels, but must investigate the competence a particular proffered witness would bring to bear on the issues, and whether it would aid the trier of fact in reaching its decision.”
 
 Kingsley Associates, Inc. v. Del-Met, Inc.,
 
 918 F.2d 1277, 1286 (6th Cir.1990). As a general rule, a district court should hear testimony before qualifying a defendant as an expert witness.
 
 See Morales v. American Honda Motor Inc., Co.,
 
 151 F.3d 500, 515 (6th Cir.1998).
 

 Plaintiffs have raised serious questions concerning the reliability of Mr. Linscott’s expert opinion as to Paramount’s alleged unliquidated damages. The court is not inclined, however, to rule on the admissibility of Mr. Linscott’s opinions in the form of a motion for summary judgment, particularly without the benefit of an independent
 
 Daubert
 
 hearing. Consequently, it remains possible for Paramount to develop a factual record at trial that could support its counterclaims for unliquidated damages. Plaintiffs’ motion for summary judgment of Paramount’s counterclaims for unliquidated damages will therefore be denied and a
 
 Daubert
 
 hearing will be scheduled prior to trial.
 
 Winningham, 42
 
 F.3d at 984.
 

 E. Settlement/Accord and Satisfaction (Affirmative Defenses 8-11, 22)
 

 Plaintiffs move for summary judgment of Paramount’s affirmative defenses that the December 11, 1997 Accommodation Agreement and payments made thereunder constitute a compromise, settlement, or an accord and satisfaction of the pre-existing purchase orders barring recovery for breach of the purchase orders. Under Ohio law, which controls the Accommodation Agreement, “an accord and satisfaction is the result of an agreement between the parties, it cannot be consummated unless the creditor accepts the ... amount with the intention that it constitutes a settlement of the claim.”
 
 State ex rel. Shady Acres Nursing Home, Inc. v. Rhodes,
 
 7 Ohio St.3d 7, 455 N.E.2d 489, 490 (1983). Whether an accord and satisfaction was reached is a question of fact.
 
 Id.
 
 at 491.
 

 Plaintiffs rely heavily on
 
 Kelsey-Hayes Co. v. Galtaco Redlaw Castings Corporation,
 
 749 F.Supp. 794 (E.D.Mich.1990) for the proposition that, under the UCC, they were entitled to “cover” the pre-existing purchase order prices by purchasing the seat frames at higher prices under the Accommodation Agreement, then sue Paramount for the difference between the Accommodation Agreement “cover” prices and the lower purchase order prices. Plaintiffs also argue they were entitled to “cover” by purchasing from the breaching party, defendant Paramount.
 

 In
 
 Kelsey-Hayes,
 
 defendant Galtaco supplied 100% of Kelsey-Hayes’ demand for metal castings. Kelsey-Hayes manufactured the castings into brake assemblies, selling the assemblies to Chrysler and Ford. Kelsey-Hayes and Galtaco had a 1987 agreement that fixed the casting prices for 1987 through April 1990. On May 10, 1989, due to Galtaco’s failing financial condition of which Kelsey-Hayes was aware, Galtaco decided it would stop producing castings. Galtaco offered Kelsey-Hayes and other customers an agreement to continue manufacturing castings for “several months”, but at a 30% price increase. According to Kelsey-Hayes, it
 
 *870
 
 was forced to accept the price increase on May 12, 1989 or be faced with causing Chrysler and Ford assembly plants to shut down. In agreeing to the price increase, Kelsey-Hayes did not expressly reserve its rights under the original 1987 price agreement. On June 9, 1989, Galtaco informed Kelsey-Hayes that it needed still another 30% price increase because other Galtaco customers had found new suppliers, causing an increase in Galtaco’s overhead. Kelsey-Hayes agreed to this second 30% price increase because it had yet to find another castings supplier. Although in the end Kelsey-Hayes accepted all of the casting shipments from Galtaco, Kelsey-Hayes refused to remit roughly $2.0 million, representing the aggregate 1989 price increases.
 

 Galtaco moved for summary judgment of: (1) Kelsey-Hayes’ claim that it did not owe the monies because it executed the 1989 agreements under duress, and; (2) Galtaco’s counterclaim for monies owing under the 1989 agreements. The
 
 Kelsey-Hayes
 
 court denied Galtaco’s motion for summary judgment, sending specific issues to the jury for trial: (1) whether Kelsey-Hayes was in fact under duress when it executed the 1989 agreements,
 
 Kelsey-Hayes,
 
 749 F.Supp. at 796; (2) whether Kelsey-Hayes had a reasonable alternative other than acquiescing to Galtaco’s demand for contract modifications,
 
 id.
 
 at 797-798; (3) whether Kelsey-Hayes’ “vigorous objections” put Galtaco on requisite notice that the 1989 agreements were not being freely entered,
 
 id.
 
 at 798-799, and; (4) whether Kelsey-Hayes had “covered” the earlier 1987 agreement under Michigan’s version of the UCC, M.C.L. § 440.2712.
 
 Id.
 
 at 799.
 

 Even assuming the reasoning of
 
 Kelsey-Hayes
 
 applies, notwithstanding that Ohio law controls the court’s assessment of the Accommodation Agreement, similar questions of fact remain in this lawsuit: (1) whether the plaintiffs signed the Accommodation Agreement under duress; (2) whether the plaintiffs had reasonable alternatives available other than negotiating and executing the Accommodation Agreement; and; (3) whether the plaintiffs put Paramount on notice that they objected to the terms of the Accommodation Agreement.
 
 Kelsey-Hayes
 
 recognized, albeit under Michigan law, that “a superseding, inconsistent agreement covering the samé subject matter rescinds an earlier contract and operates as a waiver of any claim for breach' of the earlier contract not expressly reserved.”
 
 Kelsey-Hayes,
 
 749 F.Supp. at 796 (citing
 
 Joseph v. Rottschafer,
 
 248 Mich. 606, 610-611, 227 N.W. 784 (1929) and
 
 Culver v. Castro,
 
 126 Mich.App. 824, 827-828, 338 N.W.2d 232 (1983)). The Accommodation Agreement does not contain an express reservation of right in favor of the plaintiffs to sue Paramount for the prices set forth in the pre-existing purchase orders. Indeed, a “Preservation of Rights under the Purchase Orders” clause was dropped from earlier drafts of the Accommodation Agreement, as were, as the plaintiffs point out, any references to the term-“settlement”.
 

 As to the plaintiffs’ claim of duress, the
 
 Kelsey-Hayes
 
 court noted that “in order to state a claim of economic duress a buyer coerced into executing a modification to an existing agreement must ‘at least display some protest against the higher price in order to put the seller on notice that the modification is not freely entered into.’ ”
 
 Kelsey-Hayes,
 
 749 F.Supp. at 798 (quoting
 
 United States v. Progressive Enterprises,
 
 418 F.Supp. 662, 665 (E.D.Va.1976)). Whether the plaintiffs “vigorously objected” that Paramount was breaching the purchase orders is not beyond all dispute. Construing the pleadings and evidence in a light most favorable to defendant Paramount, the
 
 Kelsey-Hayes
 
 case does not warrant summary dismissal of Paramount’s affirmative defenses 8-11 and 22 asserting that the Accommodation Agreement constitutes a compromise, settlement, or accord and satisfaction.
 

 Notwithstanding removal of the language “settlement” from the final draft
 
 *871
 
 of the Accommodation Agreement, the parties’ intent in executing the Accommodation Agreement still remains in dispute. “An [accord and satisfaction] relates to a situation where one party tenders an item in full satisfaction of a claim and the other party accepts the thing tendered. It is rudimentary that an accord requires the plaintiff to be aware that the defendant intends the tender of payment to effect a full settlement and satisfaction of the plaintiff’s claims.”
 
 David v. ANA Television Network, Inc.,
 
 997 F.Supp. 850, 855 (E.D.Mich.1998),
 
 rev’d in part on other grounds,
 
 2000 WL 222575 (6th Cir. February 16, 2000) (internal citations omitted) (applying Michigan law)
 
 [2]
 
 . It is undisputed that the plaintiffs tendered the higher Accommodation Agreement prices, and that Paramount accepted those payments. If the Accommodation Agreement and payments made and accepted thereunder were not an accord and satisfaction, the parties’ intent in executing and partially performing the Accommodation Agreement remains subject to clarification at trial. Summary judgment is inappropriate where the issue of contractual intent remains in reasonable dispute, even where the commercial contract contains an integration clause
 
 [3]
 
 .
 
 See Camargo Cadillac Co. v. Garfield, Enterprises, Inc., 8
 
 Ohio App.3d 435, 445 N.E.2d 1141 (1982). Plaintiffs GMC and Woodbridge are not entitled to summary judgement of Paramount’s affirmative defenses 8-11 and 22 of compromise, settlement, and accord and satisfaction because the issue of contractual intent remains in sufficient disagreement as to require its submission to a jury.
 
 Winningham,
 
 42 F.3d at 984.
 

 F. Adhesion Contracts (Affirmative Defense 13)
 

 Plaintiffs challenge Paramount’s affirmative defense that the pre-Accommodation Agreement purchase orders were unconscionable adhesion contracts in that, once Paramount was awarded the seat frame contract, Paramount had no real power to enforce the term requiring equitable price adjustments for added tooling and engineering changes. Under Michigan law
 
 [4]
 
 , the party seeking to set aside a contract as an adhesion contract must show that the contractual provision in question left no realistic choices or options after considering the parties’ relative bargaining power and economic strengths, and alternative sources of supply, if any.
 
 See The Andersons, Inc. v. Horton Farms, Inc.,
 
 166 F.3d 308, 322 (6th Cir.1998);
 
 Allen v. Michigan Bell Telephone Co.,
 
 18 Mich.App. 632, 171 N.W.2d 689 (1969).
 

 Paramount went through an arduous bidding process to win the seat frame contracts. The purchase orders at issue expressly called for equitable price adjustments:
 

 
 *872
 
 CHANGES: Buyer- reserves the right at any time to direct changes or cause Seller to make changes to drawings and specifications of the goods or to otherwise change the scope of the work covered by this order, including work with respect to such matters as inspection, testing, or quality control, and Seller agrees to promptly make such changes; any difference in price or time of performance resulting from such changes
 
 shall be
 
 equitably adjusted by Buyer after receipt of documentation in such form and detail as Buyer may direct.....
 

 Exhibit E attached to Complaint (emphasis added); Paramount had a realistic choice of enforcing its right to equitable adjustments in a court of law if the plaintiffs did not equitably adjust their the purchase order prices.
 

 Paramount does not dispute that tooling and engineering changes are often necessary during the life of a part. Construing the pleadings and evidence in a light most favorable to Paramount, it appears to the court that the purchase orders may have been unconscionable if they
 
 did not
 
 contain a contractual provision for equitable price adjustments. If anything, Paramount’s complaint would be that the plaintiffs breached the purchase orders for failing to award equitable price adjustments, not un-conscionability of the contract itself. The “CHANGES” provision is not substantively unreasonable. Viewing the pleadings and evidence in a light most favorable to Paramount, the plaintiffs are entitled to summary judgment of Paramount’s adhesion contract affirmative defense number 13 as a matter of law.
 
 Winningham,
 
 42 F. 3d at 984.
 

 G. Economic Impossibility (Affirmative Defense 15)
 

 Paramount’s affirmative defense of economic impossibility is that it could not economically survive and continue to produce seat frames at the purchase order prices and, therefore, it should be excused from any alleged breach of the purchase orders should the Accommodation Agreement be set aside. “[T]he law is well-established that economic inability to perform contractual obligations, even to the extent of insolvency or bankruptcy, is simply not a valid basis for excusing compliance.....Generally, however, the excuse of impossibility of performance is limited to the destruction of the means of performance by an act of God, vis major, or by law.”
 
 Stasyszyn v. Sutton East Associates,
 
 161 A.D.2d 269, 555 N.Y.S.2d 297, 299 (1990) (internal quotation omitted). “Economic unprofitableness is not the equivalent of impossibility of performance.”
 
 Chase v. Clinton County,
 
 241 Mich. 478, 484, 217 N.W. 565 (1928).
 

 Construing the pleadings and evidence in a light most favorable to Paramount, it would be impossible as a matter of law for Paramount to prove that it should be excused from performing under the purchase orders due to economic impossibility. The cases proffered by Paramount did not involve the doctrine of economic impossibility and do not support their position.
 
 See Woody v. Tamer,
 
 158 Mich.App. 764, 405 N.W.2d 213 (1987) (involving claim of tortious interference with business relations);
 
 Pollock v. Fire Ins. Exchange,
 
 167 Mich.App. 415, 423 N.W.2d 234 (1988) (barring insurance companies from benefitting from their own misdeeds). Plaintiffs are entitled to summary judgment of Paramount’s affirmative defense of economic impossibility as a matter of law.
 
 Winningham,
 
 42 F.3d at 984.
 

 II. DEFENDANT’S MOTION FOR SUMMARY JUDGMENT
 

 Defendant Paramount moves for summary judgment of the plaintiffs’ breach of purchase orders claims. Paramount also moves for summary judgment of the plaintiffs’ claim that the Accommodation Agreement should be set aside for economic duress. At the outset, the parties purchase orders, except to the extent modified by the Accommodation Agreement, are
 
 *873
 
 governed by Michigan law.
 
 See
 
 footnote 3,
 
 supra.
 

 A. Breach of GMC/Woodbridge Purchase Orders
 

 i. Purchase orders were not enforceable requirements contracts
 

 Defendant Paramount argues it is entitled to summary judgment of the plaintiffs’ breach of purchase orders claims because: (1) the purchase orders gave the plaintiffs the unilateral right to terminate the purchase order agreements and did not require the plaintiffs to purchase any seat frames, and therefore the purchase orders lacked the requisite mutuality of obligation and consideration to form a contract; (2) the purchase orders were not “exclusive” agreements and were therefore not requirements contracts, and; (3) the purchase orders became effective only upon the issuance of a release authorizing Paramount to build and ship a specific number of seat frames.
 

 M.C.L. § 440.2306 provides in part:
 

 (1) Output, requirements. A term which measures the quantity by ... requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.
 

 (2) Exclusive dealing. A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.
 

 Comment 2 to the statute reads: “Under this Article, a contract for output or requirements is not too indefinite since it is held to mean the actual good faith output or requirements of the particular party. Nor does such a contract lack mutuality of obligation since, under this section, the party who will determine quantity is required to operate his plant or conduct his business in good faith and according to commercial standards of fair dealing in the trade so that his output or requirements will approximate a reasonably foreseeable figure.” “ ‘A promise to buy of another person or company all or
 
 some of
 
 the commodity or service that the promissor may thereafter need or require in his business is not an illusory promise and such a promise is a sufficient consideration for a return promise.’ Corbin, 1A Corbin on Contracts § 156 (1963)”.
 
 Precision Rubber Products Corp. v. George McCarthy, Inc.,
 
 872 F.2d 187, 188 (6th Cir.1989) (emphasis added).
 

 Construing the pleadings and evidence in a light most favorable to the plaintiffs GMC and Woodbridge, it remains possible for the plaintiffs to develop a record at trial demonstrating that the various purchase orders are in fact enforceable requirements contracts. Plaintiffs owed a contractual duty under Michigan’s version of the UCC to execute the purchase orders “in good faith and according to commercial standards of fair dealing in the trade”. M.C.L. § 440.2306 Comment 2. If, in bad faith or inconsistent with commercial standards of fair dealing, the plaintiffs exercised a unilateral right not to purchase seat frames or to terminate the purchase orders, the plaintiffs would be subject to liability for breach of contract.
 
 Id.
 
 This same reasoning holds true had the plaintiffs acted in bad faith and not issued a release. The purchase orders, governed by the UCC, are not unenforceable for lack of mutuality of performance or obligation.
 
 Id.;
 
 M.C.L. § 440.2306.
 

 M.C.L. § 440.2306 expresses a legislative intent to enforce both exclusive and non-exclusive requirements contracts. M.C.L. § 440.2306(2) applies a standard to “exclusive dealing” that is not applicable to the class of output requirements referred to in M.C.L. § 440.2306(1). “An exclusive dealing agreement brings into play all of the good faith aspects of the output and
 
 *874
 
 requirement problems of subsection (1).
 
 It also raises
 
 questions of insecurity and right to adequate assurance under this Article.” M.C.L. § 440.2306 Comment 5. The statute and official comments simply do not support Paramount’s assertion that all requirements contracts are exclusive requirements contracts; a requirements contract may exist where “all or some of’ the purchaser’s requirements are purchased from the seller.
 
 See Precision Rubber Products Corp. v. George McCarthy, Inc.,
 
 872 F.2d at 188. The proffered “Supplemental Authority” proffered by Paramount is not premised upon Michigan law.
 
 [5]
 
 The court is persuaded that the purchase orders remain enforceable as contracts, particularly to the extent performance has been rendered.
 

 ii. Purchase orders unenforceable as unconscionable
 

 Paramount argues the purchase orders are unenforceable as unconscionable because: (1) they gave Paramount no reasonable alternative but to continuing shipping parts to the plaintiffs at purchase order prices after the plaintiffs refused to grant equitable price adjustments; (2) the parties were of unequal bargaining power, and; (3) plaintiffs had the right to unilaterally terminate the purchase orders.
 

 As discussed in Section I, F.,
 
 supra,
 
 the purchase orders were not unconscionable because they contained a clause allowing for equitable adjustments for tooling additions and engineering changes.
 
 Andersons, Inc.,
 
 166 F.3d 308, 322;
 
 Allen,
 
 18 Mich.App. 632, 171 N.W.2d 689. The purchase orders were more likely to be found unconscionable if they
 
 did not
 
 contain such clauses. If the plaintiffs did not honor their obligations to make equitable adjustments, Paramount would be entitled to sue the plaintiffs for breach of contract.
 

 Paramount’s argument that the purchase orders are unconscionable because they gave the plaintiffs a right of unilateral termination neglects to mention the remedies available to Paramount in the event of such a termination, being recovery of the order price for all previously completed goods, and the actual costs of work-in-progress and raw materials.
 
 See
 
 “TERMINATION” clause, Exhibit E, as attached to Complaint. Under Michigan’s version of the UCC:
 

 440.2719. Contractual modification or limitation of remedies
 

 Sec. 2719. (1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages (a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer’s remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
 

 (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act.
 

 (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.
 

 M.C.L. § 440.2719. Consistent with the parties’ rights to limit the remedies available for termination of a commercial contract, and the availability of other remedies should the chosen remedy fail in its essential purpose, the court is not persuaded that the right of termination contained in the purchase orders makes the purchase orders unconscionable.
 
 See Cardinal Stone Co., Inc. v. Rival Mfg. Co.,
 
 669 F.2d
 
 *875
 
 395 (1982) (enforcing termination clause under Ohio’s version of U.C.C.). The termination clause is not substantively unconscionable.
 
 The Andersons, Inc.,
 
 166 F.3d at 322;
 
 Allen,
 
 18 Mich.App. at 635, 171 N.W.2d at 692. The parties unequal bargaining power alone is not enough to find the purchase agreements unconscionable.
 
 Id.
 

 B. Accommodation Agreement is controlling
 

 i. Plaintiffs cannot prove economic duress
 

 Paramount argues the Accommodation Agreement is controlling over the prior purchase orders because the plaintiffs cannot show they are entitled to have the Accommodation Agreement set aside for economic duress in the absence of illegal conduct. “To avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party.”
 
 Blodgett v. Blodgett,
 
 49 Ohio St.3d 243, 246, 551 N.E.2d 1249 (1990). “A person who claims to have been a victim of economic duress must show that he or she was subjected to '***
 
 a wrongful or unlawful act
 
 or threat, ***’ and that it ‘*** deprive[d] the victim of his unfettered will.’ ”
 
 Id.
 
 at 246, 551 N.E.2d 1249 (quoting 13 Williston on Contracts (3 Ed. 1970) 704, § 1617) (emphasis added). “Duress involves illegality, and implies that a person has been unlawfully constrained by another to perform an act under circumstances which prevent the exercise of free will, and it can never constitute fraud or duress to do as and what a person has a legal right to do, whatever the pecuniary consequences may be to those with whom he deals.”
 
 Mancino v. Friedman,
 
 69 Ohio App.2d 30, 36, 429 N.E.2d 1181 (1980). Yet, “the defense of economic duress, or business compulsion, arises where one individual, acting upon another’s fear of impending financial injury, unlawfully coerces the latter to perform an act under circumstances which prevent his exercise of free will.”
 
 Id.
 
 at 36, 429 N.E.2d 1181.
 

 GMC’s Dr. Orris has testified that GMC would have lost millions of dollars per day if Paramount immediately ceased production and shipment of the plaintiffs’ seat frame requirements, factually supporting the plaintiffs’ allegation that it executed the Accommodation Agreement under economic duress. Construing the pleadings and evidence in a light most favorable to the plaintiffs, it remains possible for the plaintiffs to demonstrate that Paramount unlawfully coerced the plaintiffs into executing the Accommodation Agreement by threatening to immediately stop producing seat frames without a legal right to do so, and thereby depriving the plaintiffs of the exercise of their free will.
 
 See Mancino,
 
 69 Ohio App.2d at 36, 429 N.E.2d 1181. Economic duress may be accomplished through a “wrongful” act as well as an “illegal” act.
 
 [6]
 

 Blodgett,
 
 49 Ohio St.3d at 246, 551 N.E.2d 1249.
 
 See also Kelsey-flayes,
 
 749 F.Supp. at 798 n. 7-8 (interpreting Michigan law as not requiring proof of criminal conduct). A clear unlawful breach of contract by Paramount under circumstances that would shut down production of vehicles by GMC certainly satisfies the “illegal” conduct requirement of an economic duress defense.
 
 Mancino,
 
 69 Ohio App.2d at 36, 429 N.E.2d 1181. In that it remains possible for the Accommodation Agreement to be set aside on the basis of economic duress, Paramount is not entitled to summary judgment on its coun
 
 *876
 
 terclaim for recovery under the Accommodation Agreement.
 
 Winningham,
 
 42 F.3d at 984.
 

 ii Accommodation Agreement is an accord and satisfaction and/or the plaintiffs waived their right to sue under the purchase orders
 

 Paramount’s final argument is that it is entitled to summary judgment on its counterclaims for breach of the Accommodation Agreement because the Accommodation Agreement constituted an accord and satisfaction under which the plaintiffs did not reserve their right to sue under the purchase orders. If the Accommodation Agreement is set aside for economic duress, however, it remains possible that the purchase orders will control the parties’ rights and remedies. This reason alone warrants denial of summary judgment.
 

 Further, a question of fact remains as to the parties’ contractual intent in executing the Accommodation Agreement.
 
 See
 
 Section I, E.,
 
 supra.
 
 Although the plaintiffs did not include an express reservation of right in the Accommodation Agreement, the parties also eliminated the use of the term “settlement” within the Agreement. The circumstances surrounding the Accommodation Agreement, and the UCC rules to be applied in interpreting the Accommodation Agreement, do not lend themselves to adjudicating the breach" of Accommodation Agreement counterclaims on a motion for summary judgment.
 
 See Camargo Cadillac Co.,
 
 3 Ohio App.3d 435, 445 N.E.2d 1141. The court awaits full development at trial.
 

 CONCLUSION
 

 Plaintiffs General Motors Corporation’s Woodbridge Corporation’s, Woodbridge Foam Corporation’s, and Cartex Corporation’s motion for summary judgment is hereby GRANTED, IN PART, as to defendant Paramount Metal Products Company’s counterclaims of fraud, breach of a duty of good faith and fair dealing, and punitive damages, as well as Paramount’s affirmative defenses of adhesion contract and economic impossibility. Defendant’s counterclaims of fraud, breach of a duty of good faith and fair dealing, and punitive damages, as set forth respectively in counts I, III, and VII of Paramount’s counterclaim, are hereby DISMISSED with prejudice. Paramount’s affirmative defense number 13 alleging an adhesion contract, and affirmative defense number 15 alleging economic impossibility are also hereby DISMISSED with prejudice. The remainder of the plaintiffs’ motion for summary judgment is hereby DENIED. Defendant’s motion for summary judgment is hereby DENIED. Plaintiffs’ objection to the proffering of supplemental authority is hereby DENIED as moot.
 

 SO ORDERED.
 

 [1]
 

 .
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
 

 [2]
 

 . Plaintiffs proffer Michigan law in support of their position.
 

 [3]
 

 . Ohio Revised Code § 1302.05 states:
 

 Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
 

 (A) by course of dealing or usage of trade as provided in section 1301.11 of the Revised Code or by a course of performance as provided in section 1302.11 of the Revised Code; and
 

 (B) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.
 

 [4]
 

 . The purchase orders attached to the plaintiffs' complaint provide that “the law of the state from which [the] order issues” is controlling. Exhibit E attached to Complaint. The purchase orders examined by the court show that the orders issued from Michigan addresses. Consistent with
 
 Banek, Inc.,
 
 6 F.3d at 360-361,
 
 Johnson,
 
 191 F.3d at 738-739, and
 
 Liberty Mutual Ins. Co.,
 
 512 F.Supp. at 1169, the court will apply Michigan law to any analysis of the purchase orders.
 

 [5]
 

 . Plaintiffs’ objection to this authority is denied as moot.
 

 [6]
 

 . Plaintiffs have argued that, even if illegal conduct is an element of economic duress, Paramount’s alleged threats to immediately cease seat frame production constituted extortion under 18 U.S.C. § 1952.
 
 See
 
 18 U.S.C. § 1951(a)(2) ("The term ‘extortion’ means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.”). As discussed above, however, proof of criminal conduct is unnecessary to meet the economic duress requirements of "unlawful” or “wrongful” conduct.