*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CADILLAC RUBBER & PLASTICS, INC., doing business as AVON AUTOMOTIVE, and AVON AUTOMOTIVE HOLDINGS, INC.,

Plaintiffs-Appellants,

v

TUBULAR METAL SYSTEMS, LLC,

Defendant-Appellee.

FOR PUBLICATION
February 11, 2020

No. 345512
Oakland Circuit Court
LC No. 2018-164214-CB

Before: FORT HOOD, P.J., and SAWYER and SHAPIRO, JJ.

SHAPIRO, J. (*concurring in part, dissenting in part*).

I concur in the majority's conclusion that a separate, signed document was not required to create a valid irrevocable option because there was consideration for that option. However, I respectfully dissent from the majority's affirmance of the conclusion that, as a matter of law, the written agreement created a "requirements contract." I conclude that the contract language itself does not unambiguously create a requirements contract and that its status should be determined after discovery and with consideration of parol evidence.

The majority relies largely on *Johnson Controls, Inc v TRW Vehicle Safety Sys, Inc*, 491 F Supp 2d 707 (ED Mich, 2007), and *Gen Motors Corp v Paramount Metal Prods Co*, 90 F Supp 2d 861, 873 (ED Mich, 2000). In my view, neither of those cases support the trial court's decision that the contract can only be read as a requirements contract. Neither concluded that the agreement in question was a requirements contract as a matter of law. To the contrary, they each found that there was an ambiguity regarding the nature of the contract and concluded that it was a question of fact to be determined after consideration of parol evidence and the parties' past practices and dealings. See *Johnson Controls*, 491 F Supp 2d at 719-720; *Gen Motors Corp*, 90 F Supp 2d at 873.

The majority contends that *Johnson Controls* held that a term of "a minimum quantity of at least one piece or unit of each of the Supplies and no more than 100% of Buyer's requirements for the Supplies," meets the requirements of the UCC. I disagree with this reading of the case.

-1-

*Johnson Controls* held that the terms were sufficient to establish a contract that did not violate the statute of frauds. *Johnson Controls*, 491 F Supp 2d at 718. However, as noted, the court remanded the case for a factual finding to determine whether "the parties' past dealings and current course of performance . . . indicate that a requirements contract was intended." *Id*. at 720. See also *Metal One America, Inc v Ctr Mfg Inc*, unpublished opinion of the United States District Court for the Western District of Michigan, issued July 14, 2005 (Case No. 1:04-CV-431) (relying on the parties' course of performance and past dealings to find that a requirements contract existed). Similarly, in *General Motors*, the court held that a supply contract need not be exclusive in order to constitute a requirements contract, but did not rule on whether the agreement was a requirements contract, stating:

> Construing the pleadings and evidence in a light most favorable to the plaintiffs [, the non-moving buyer], it remains possible for the plaintiffs to develop a record at trial demonstrating that the various purchase orders are in fact enforceable requirements contracts. [*Gen Motors Corp*, 90 F Supp 2d at 873.]

For an agreement to unambiguously create a requirements contract it is not necessary that the agreement be exclusive, but it must define a practicable estimate or range of future requirements. "A requirements or output term of a contract, although general in language, nonetheless is, if stated in the writing, specific as to quantity . . . ." *Lorenz Supply Company v American Standard, Inc*, 419 Mich 610, 615; 358 NW2d 845 (1986) (emphasis removed). In *Plastech Engineered Prod v Grand Haven Plastics, Inc*, unpublished per curiam opinion of the Court of Appeals, issued March 31, 2005 (Docket No 252532), pp 7-8, our Court held that a requirements contract need not contain an estimate of needed goods where the contract provides that the buyer will use the seller's products for "100% [of the buyer's] requirements." Where the buyer's requirements will all be ordered from the seller, i.e., an exclusive arrangement, such a description is sufficiently specific even though the actual amount may vary. However, where the contract is not exclusive, it should not be read as a requirements contract absent an estimate or range of anticipated future orders. See e.g., *Cyril Bath Company v Winters Indus*, 892 F2d 465, 467 (CA 6, 1989) ("[A] contract to furnish only part of the buyer's requirements along with an approximate number of the identified goods is sufficient to be a requirements contract under [the] UCC . . . ."); 1 White and Summers, Uniform Commercial Code (6th ed), § 4:20, p 335 ("Where an agreement does not establish exclusivity and is otherwise silent as to quantity, the agreement is treated as an open offer to sell [or buy]."). "Because section 2-306 depends on exclusivity to determine the contract, there can be no valid requirements contract without it . . . . Despite the presence of another supplier, the contract may be sufficiently 'exclusive.' This may occur where a purchaser agrees to purchase exclusively from a seller up to a certain quantity." *Id*. at p 333.

The majority does not cite any case holding that a promise to buy between 1 unit and 100 percent of requirements is sufficient to create a requirements contract. Such a conclusion would severely undercut the UCC's requirements that the parties act in good faith regarding an estimate of production requirements. When the contract is non-exclusive and also provides no estimate of future requirements, it is difficult to see how a party's good faith could ever be challenged. Here, the range is nothing more than "whatever we order." If that is adequate then a buyer could sign another non-exclusive contract with another supplier who can sell more cheaply and order 99.9% of their requirements from this alternative supplier without ever breaching the contract with the

first supplier. In sum, without a baseline estimate, a non-exclusive contract does not provide sufficient information to meet the requirement that the "output or requirements will approximate a reasonably foreseeable figure." MCL 440.2306, comment 2.

It is certainly possible that the past practices and dealings between the parties establish a reasonable basis from which defendant could determine what its production requirements are likely to be, taking into account good faith variations. See 1 White and Summers, Uniform Commercial Code (6th ed), § 4:20, p 334 ("Exclusivity can also be established through implication, course of dealing, or extrinsic evidence."). If so, it would constitute a requirements contract. But that conclusion cannot be made on the text of the contract alone. To determine whether the agreement is a requirements contract, factual findings must be made. See *Aleris Aluminum Canada LP v Valeo, Inc*, 718 F Supp 2d 825, 832 (ED Mich, 2010) (holding that where the quantity term is not clearly stated, "parol evidence is admissible to show that the parties intended as to the exact quantity.") (quotation marks and citation omitted).

If parol evidence of past practice or dealings demonstrates beyond a question of fact that there was a good faith estimate on which the seller could generally rely, I would agree that the trial court could rule on the question in a motion under MCR 2.116(C)(10). If, however, a question of fact remains, the determination is for the factfinder.

In my view, a promise to purchase anywhere from 1 unit to 100% of needs in a non-exclusive contract, does not, in and of itself, create a requirements contract consistent with the UCC. Accordingly, I would reverse the grant of summary disposition to plaintiff and remand for further proceedings.


/s/ Douglas B. Shapiro